1997-NMCA-057

943 P.2d 110

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Charles LA MADRID, Defendant– Appellant.**

**No. 16928.**

Court of Appeals of New Mexico.

April 25, 1997.

Certiorari Denied June 25, 1997.

Tom Udall, Attorney General, William McEuen, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Todd Hotchkiss Frechette & Associates, Albuquerque, for Defendant–Appellant.

*OPINION*

HARTZ, Chief Judge.

(1) Defendant appeals his convictions on one count of first degree criminal sexual penetration of a child under 13, three counts of child abuse, and one count of intimidation of a witness. He contends that we must dismiss the charges with prejudice because there was insufficient evidence of guilt. Alternatively, he argues that if there was sufficient evidence of guilt, he is entitled to a new trial because (1) the district court improperly restricted his cross-examination of an investigating officer, (2) the State improperly refreshed the memory of a witness, (3) the district court improperly excluded evidence that the victim's mother (the Mother) had been abused as a child, (4) the district court improperly excluded documents that impeached the Mother's testimony, (5) the prosecutor improperly commented in closing argument on Defendant's failure to testify, (6) the district court erred in admitting prior consistent statements by the alleged victim (the Child) and the Mother, and (7) cumulative error requires reversal. We affirm.

## I. ISSUES DECIDED SUMMARILY

### A. Sufficiency of the Evidence

(2) Defendant's brief in chief includes a perfunctory argument that the evidence of guilt was insufficient. The State's answer brief summarizes evidence at trial that would suffice to convince a rational juror beyond a reasonable doubt of each of the elements of the offenses for which Defendant was convicted. *See State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). Defendant's reply brief does not address the sufficiency-of-the-evidence issue, much less point out any errors in the recitation of evidence by the State. We hold that the evidence was sufficient to sustain the verdicts.

### B. Cross-examination of Detective Denhollander

(3) Detective Casey Denhollander was called by the State to testify about his interview of Defendant. On cross-examination defense counsel elicited that Denhollander had also interviewed Lisa Tesillo and Loretta Whitting. He then attempted to ask Denhollander whether he had written in his notes that these two women appeared to be exaggerating. Although neither woman had testified at trial, defense counsel was apparently seeking ammunition that could be used against them if the State called them as witnesses. The district court sustained the State's objection to the question.

(4) Although only Tesillo later testified, we analyze this issue on the assumption that both women were witnesses at trial. The law sets limits on how a witness can be discredited. We can think of only three possible grounds for permitting Denhollander to testify that the women had exaggerated. None is persuasive. First, his statement that they had exaggerated could be construed as a comment on their character for veracity. But no foundation was laid that would have qualified Denhollander to express an opinion on their character. *See* Rule 11–608(A) NMRA 1997. Second, his statement could be construed as testimony that each had committed an act (exaggerating) that was probative of her untruthfulness. But when prior misconduct of a witness is offered to establish the witness's character for lack of truthfulness, the misconduct cannot be proved by extrinsic evidence. (Such impeachment by prior misconduct must not be confused with impeachment by a prior inconsistent statement, which is not involved here.) Thus, the fact that the women made the statements (which presumably could be established to be untrue) could be proved only by cross-examination of the women themselves. *See* Rule 11–608(B)(1). Third, Denhollander's statement could be construed as an opinion summarizing how what the women said compared to what else he knew about the case. But his opinion that the witnesses were exaggerating would be admissible only if that opinion would be "helpful to a clear understanding of [his] testimony or the determination of a fact

in issue." Rule 11–701(B) NMRA 1997. The district court would be acting well within its discretion in finding that Denhollander's opinion, as opposed to his personal knowledge of the facts of the case (such as facts inconsistent with the women's trial testimony), would not be "helpful." *Cf. State v. Flanagan*, 111 N.M. 93, 96–98, 801 P.2d 675, 678–80 (Ct.App.1990) (improper to ask defendant if another witness is lying).

## C. Refreshing Recollection of Lisa Tesillo

██ (5) During the direct examination of Lisa Tesillo, the prosecutor requested an opportunity to refresh her memory with her prior statement. Because Tesillo was illiterate, the prosecutor stated that he would have to read the statement to her. The court offered a short recess to allow the prosecutor to do so. Although informed of what the prosecutor intended to do, defense counsel did not object to the procedure until the witness returned to the stand. The objection was too late. When a timely objection would enable the trial judge to avoid or cure an error, counsel cannot preserve error by objecting after avoidance or cure is impossible. If defense counsel believed that the State had not established a proper foundation for refreshing Tesillo's recollection, or if defense counsel disapproved of the manner in which Tesillo's recollection was refreshed, the time to object was before the prosecutor read Tesillo her prior statement. By the time defense counsel objected, it would have been impossible to erase from Tesillo's mind what she had heard from the prosecutor. Her memory could not be *unrefreshed*. This is the quintessential circumstance in which to follow the general rule that an untimely objection is an ineffective objection. *See State v. Trujillo*, 119 N.M. 772, 776, 895 P.2d 672, 676 (Ct.App.), *cert. quashed*, 120 N.M. 394, 902 P.2d 76 (1995).

## D. Sexual Abuse of the Mother

██ (6) Defendant contends that the district court erred in granting the State's motion in limine to exclude evidence of the sexual history of the Mother. On appeal Defendant contends that "the accuracy of [the Mother's] allegations of what abuse occurred to her son by [Defendant] is determined by her own life experience, which included childhood abuse." The district court excluded the evidence pursuant to Rule 11–403 NMRA 1997, stating that the "scant probative value of this evidence is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues and/or danger of misleading the jury." Such a decision regarding the admissibility of evidence is within the discretion of the district court. *See State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). Defendant has not pointed to anything in the record that demonstrates an abuse of that discretion.

## E. Admission of Exhibits to Impeach Mother

██ (7) On cross-examination defense counsel impeached the Mother with statements she had made on two documents: an application for the Headstart program and a form for the state Income Support Division. The district court refused, however, to admit the exhibits themselves into evidence because they contained significant amounts of extraneous material, including information that would show that the Mother was on welfare. We leave to the discretion of the trial judge whether to admit a document when its contents have already been used on cross-examination to impeach the witness. We find no abuse of that discretion here. *See State v. Davis*, 97 N.M. 130, 132–33, 637 P.2d 561, 563–64 (1981) (trial judge did not admit prior statement of witness that had been used to impeach witness).

## II. COMMENT ON DEFENDANT'S FAILURE TO TESTIFY

██ (8) In her closing argument the prosecutor said:

The defense attorneys in this case will try to throw doubts your way and hope someone out there will swallow the hook. Please remember your job is not to look for doubts. But, as the Judge just told you, your job is to seek the truth. What is reasonable doubt? The best way in these kinds of cases that I can think of to explain to you what reasonable doubt is, is to tell

you what it isn't. Why did the Defendant commit the crimes of physical abuse and sexual abuse against Michael Gutierrez? No one understands that. The motive for robbery, is understandable. The motive for child abuse, either sexual or physical, is not. The only one who can tell you the motive is the Defendant.

At that point defense counsel objected. During the bench conference that followed he moved for a mistrial because of the prosecutor's last sentence. He argued that the sentence "comments on his right not to testify and what [the prosecutor] is doing is calling [to] the jurors' attention that he has not taken the stand and testified." He also requested that if the court did not grant a mistrial, it should give a curative instruction to the jury. The prosecutor responded that she had been interrupted in mid-sentence and was going to refer to what Defendant had told detective Denhollander. (According to the State's answer brief, she was referring to a statement by the Defendant that he thought showering with the Child would be fun.) The court denied the mistrial motion but instructed the jury as follows:

> Ladies and gentlemen of the jury, the Defendant has a right not to testify. You are to disregard the comment about the Defendant explaining the motive for child abuse. You must not draw any inference of guilt from the fact that the Defendant did not testify in this case nor should this fact be discussed by you or enter into your deliberations in any way.

(9) To determine whether this instruction cured any potential error, we must examine the principles underlying the prohibition against comment on a defendant's failure to testify. The leading case forbidding such comment is *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In that case the jury was instructed as follows:

> As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable.

*Id.* at 610, 85 S.Ct. at 1230. The prosecutor's argument exploited this instruction. The defendant had been seen with the deceased in the alley where her body was found. The prosecutor argued:

> The defendant certainly knows whether Essie Mae had this beat up appearance at the time he left her apartment and went down the alley with her.

> What kind of a man is it that would want to have sex with a woman that beat up if she was beat up at the time he left?

> He would know that. He would know how she got down the alley. He would know how the blood got on the bottom of the concrete steps. He would know how long he was with her in that box. He would know how her wig got off. He would know whether he beat her or mistreated her. He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman.

> These things he has not seen fit to take the stand and deny or explain.

> And in the whole world, if anybody would know, this defendant would know.

> Essie Mae is dead, she can't tell you her side of the story. The defendant won't.

*Id.* at 610–11, 85 S.Ct. at 1231. The Supreme Court reversed the conviction. As later explained by the Court, "Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated." *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988); *see Green v. State,* 35 Md.App. 510, 371 A.2d 1112, 1126 (the prosecutor is prohibited "from arguing to the jury the proposition that they can and should infer a guilty state of mind from testimonial silence"), *rev'd on other grounds,* 281 Md. 483, 380 A.2d 43 (1977).

■ (10) In other words, the prosecution cannot suggest that an innocent person would have testified to explain the circumstances and therefore the defendant, who did not testify, must be guilty. But that is not what the prosecutor did in this case. She said: "The motive for child abuse ... is not [understandable]. The only one who can tell you the motive is the Defendant." This comment may have highlighted that Defendant had not stated his motive for committing the crime. But the prosecutor was not suggesting that if Defendant were innocent, he would have testified to the motive. That would be absurd. If Defendant did not commit the crime, he had no motive that compelled him to commit the crime. In the context of the earlier remarks by the prosecutor, it appears that she was simply asking the jury to convict even though it could not know what might have motivated such an offense. The prosecutor's argument here is a far cry from that condemned in *Griffin.* It in no way asks the jury to infer guilt from Defendant's silence at trial.

■ (11) Nevertheless, there is still potential impropriety in the prosecutor's remarks. As a general rule, the prosecution should refrain from bringing to the attention of the jury the failure of the defendant to testify at trial. *But cf. Robinson,* 485 U.S. at 32, 108 S.Ct. at 868–69 (prosecutor's comment in response to claim made by defendant did not violate defendant's privilege); *State v. Martinez,* 98 N.M. 27, 29, 644 P.2d 541, 543 (Ct.App.1982) (prosecutor can argue that evidence of guilt was uncontradicted). Perhaps this general rule is not a necessary corollary to the principles laid down in *Griffin. See Green,* 371 A.2d at 1126. But it serves a prophylactic purpose and emphasizes to prosecutors that they should be very wary of saying anything that might suggest that failure to testify implies guilt.

(12) On the other hand, when the prosecutor's comment does no more than direct the jury's attention to the defendant's failure to testify, the threat to a defendant's Fifth Amendment privilege is much less than when a prosecutor argues that the jury should infer guilt from the failure to testify. After all, the jury is well aware that the defendant has not testified. They do not need the prosecutor to inform them of that fact. What *is* important is that the jury know that they should not draw an adverse inference from the defendant's failure to testify. Therefore, when the prosecutor makes a comment such as the one in this case, a proper instruction from the court can cure any potential harm that may have arisen from the prosecutor's pointing out that the defendant failed to testify. *See United States v. Armstrong,* 654 F.2d 1328, 1336 (9th Cir.1981) (when (1) a single isolated statement did not stress any inference of guilt because of the silence and (2) there were curative instructions, the statement was harmless beyond a reasonable doubt).

(13) We therefore find no reversible error arising from the prosecutor's statement.

## III. PRIOR CONSISTENT STATEMENTS

(14) Defendant contends that the district court improperly admitted hearsay statements by the Child and the Mother. The alleged hearsay was admitted during the testimony of five different trial witnesses. We address each witness in turn.

### A. Mother's Testimony

■ (15) After the Child had testified about the sexual abuse committed by Defendant, the Mother testified that the Child had told her that "[Defendant] had put his dingy in his mouth." On appeal Defendant acknowledges that he did not object to the testimony. Nevertheless, he asks us to find that admission of the testimony was fundamental error that caused "a miscarriage of justice." *State v. Osborne,* 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (internal quotation omitted). We find no fundamental error. The eight words of the Mother's testimony repeated the Child's own testimony. Such repetition did not deny Defendant "substantial justice." *State v. Hennessy,* 114 N.M. 283, 287, 837 P.2d 1366, 1370 (Ct.App. 1992), *overruled in part on other grounds by, State v. Lucero,* 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993).

## B. Testimony by Duff and Madrid

▇ (16) Officer Sue Duff testified that the Mother had told her that (1) Defendant had said that he had sexual feelings toward the Child, (2) she had taken the Child for a physical examination, (3) Defendant babysat for the Child, and (4) the Child seemed a little angrier than before. The evidence was admitted over Defendant's hearsay objection. The testimony of Judy Madrid was similar, but shorter. She testified, over Defendant's hearsay objection, that the Mother had told her that Defendant had admitted having sexual feelings for the Child.

(17) We need not determine whether the hearsay objections were meritorious. Not only had the Mother previously testified to these matters, she had even testified, without objection, that (1) she had told Duff what Defendant had said and that the Child "was angry" and (2) she had also told Madrid what Defendant had told her. Defendant's failure to object to the Mother's testimony about her own prior statements may have been a matter of trial strategy rather than just an oversight. Defendant was on trial for child abuse as well as for criminal sexual penetration. Defense counsel attempted to impeach the Mother's testimony concerning child abuse by pointing out that when she had reported the sexual abuse she had not mentioned Defendant's alleged beatings of the Child. In particular, in cross-examining the Mother, defense counsel elicited that when the Mother spoke to Duff and Madrid she never mentioned that she had seen Defendant hit the Child. Defendant cannot acquiesce in the admission of a hearsay statement when it appears to suit his purpose and then claim reversible error when the same statement is admitted later through another witness. Cf. State v. Crislip, 110 N.M. 412, 416–17, 796 P.2d 1108, 1112–13 (Ct.App.1990) (waiver of objection to inadmissible evidence); State v. Martinez, 99 N.M. 48, 52, 653 P.2d 879, 883 (Ct.App.1982) (admission of cumulative evidence was harmless error).

## C. Testimony by Cady and Cordova

▇ (18) The other two witnesses, Jennifer Cady and Theresa Cordova, both testified over objection about statements the Child had made to them. Cady, who was instructed by the prosecutor not to name the person identified by the Child, said that the Child told her: "He played with my dingy" and "He put his dingy in my mouth." Cordova testified that the Child told her that Defendant "touched him in his privates" in the shower. The Child's conversations with Cady and Cordova both occurred on the same day, January 2, 1993.

▇ (19) The statements by the Child to Cady and Cordova were offered by the State as prior consistent statements. Prior consistent statements are deemed not to be hearsay under our rules of evidence if they are offered to rebut a claim of recent fabrication or improper influence or motive. See Rule 11–801(D)(1)(b) NMRA 1997; State v. Casaus, 121 N.M. 481, 484–87, 913 P.2d 669, 672–75 (Ct.App.1996).

(20) On appeal the State contends that the Child's statements in January 1993 rebutted a defense claim that the Child's accusations were the result of the Mother's influence shortly before he testified for trial. It points out that in cross-examining the Child, defense counsel elicited that the Child had not mentioned fellatio during a recent interview in the prosecutor's office but that the Mother had "reminded" him about fellatio after the interview and prior to his testimony. The Child's statements in January 1993 long predated the interview with the prosecutor and could rebut a claim of recent improper influence.

(21) Defendant responds, however, that the Child's motive to lie predated the statements to Cady and Cordova. According to Defendant the motive to lie arose in October 1992, when Defendant and the Mother ended their romantic relationship. In his opening statement defense counsel alleged that the "scorned" Mother had sought revenge by concocting the false allegations.

(22) As we noted in Casaus, the trial judge may have difficulty in determining when an improper motive or influence arose. 121 N.M. at 487, 913 P.2d at 675. Here, there is no doubt concerning the Mother's influence between the time of the police interview and the time of the Child's testimony. The ques-

tion is whether the Child was subjected to an improper influence from the Mother before that time. The State notes that the Mother testified that she broke off the relationship when Defendant stated that he had sexual feelings toward the Child. Likewise, Officer Denhollander testified that Defendant told him that the accusation of sexual misconduct caused their breakup. This evidence suggests that it was not the breakup that motivated the Mother to allege sexual misconduct by Defendant. Also, there was no direct testimony that prior to the police interview the Mother attempted to influence the Child to be hostile toward Defendant or to accuse him of misconduct. Moreover, the circumstances in which the Child first stated (to the Mother and then to Cady and Cordova) that he had been sexually assaulted by Defendant suggests that there had been no attempt to influence him to make such accusations. The circumstances here (which we have not described in detail) are similar to those which led us to affirm the admission of prior consistent statements in *State v. Altgilbers*, 109 N.M. 453, 457, 786 P.2d 680, 684 (Ct.App. 1989). *See Casaus*, 121 N.M. at 485 n. 1, 913 P.2d at 675 n. 1 ("[T]he statements to the therapist in *Altgilbers* may have been made before any alleged improper influence or motive originated in the minds *of the children* and thus may have been admissible even under today's more narrow interpretation of [Rule 11–801(D)(1)(b) ].").

(23) We need not, however, decide whether the district court erred in admitting the testimony of Cady and Cordova.[1] Assuming that the Child's statements to them were inadmissible, any error was harmless. The essence of the challenged testimony had already been properly presented to the jury on several occasions. Most important of all, everything in the Child's statements to Cady and Cordova had been included in the Child's own trial testimony. As a result, defense counsel had a full opportunity to cross-examine the person who made the statements that

Defendant claims to be hearsay. *See* Richard D. Friedman, *Prior Statements of a Witness: A Nettlesome Corner of the Hearsay Thicket*, 1995 Sup.Ct.Rev. 272, 291. We are confident that any error in admitting the Child's statements to Cady and Cordova did not affect the verdict.

## IV. CUMULATIVE ERROR

▮ (24) Several errors that would in themselves be harmless may together create reversible error if they deprived the defendant of a fair trial. *See State v. Baca*, 120 N.M. 383, 392–93, 902 P.2d 65, 74–75 (1995). We have assumed in this opinion that some trial errors occurred. Even cumulatively, however, they did not deprive Defendant of a fair trial.

## V. CONCLUSION

(25) For the above reasons, we affirm Defendant's convictions.

(26) **IT IS SO ORDERED.**

APODACA and ARMIJO, JJ., concur.

---

1. In particular, we need not decide whether the Child's statements to Cady and Cordova were admissible to rebut the charge that the Child's testimony was improperly influenced by the Mother after the Child was interviewed by the police, even if the statements did not predate an earlier improper influence upon the Child by the Mother. *See People v. Hayes*, 52 Cal.3d 577, 276 Cal.Rptr. 874, 802 P.2d 376, 395 (1990) (en banc) ("[A] prior consistent statement is admissible if it was made before the existence of any one or more of the biases or motives that, according to the opposing party's express or implied charge, may have influenced the witness's testimony.").