117 P.3d 970 (2005)
2005-NMCA-107
STATE of New Mexico, Plaintiff-Appellee,
v.
Phillip GARVIN, Defendant-Appellant.
No. 24,299.
Court of Appeals of New Mexico.
June 21, 2005.
Certiorari Granted August 5, 2005.
Certiorari Denied August 11, 2005.
*972 Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.
John Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 29,334, August 5, 2005.
Certiorari Denied, No. 29,337, August 11, 2005.

OPINION
SUTIN, Judge.
{1} Defendant Phillip Garvin, a homeless man, was in line at a local soup kitchen when a man he did not know, who identified himself as Jimmy or Santiago, asked Defendant if he wanted to earn money doing yard work, an offer that Defendant accepted. The man asked Defendant if he had identification, if he would cash a check for him, and if he wanted to get something to eat. Defendant accompanied the man to a bank where the man wrote a check to Defendant in the amount of $315. Defendant signed the back of the check, walked to the counter, handed his driver's license to the teller, and cashed the check.
{2} Defendant tried to give the cash to the man in the bank, but he would not take the money until they got outside. The man drove to a fast food restaurant with Defendant, and gave Defendant $20 to get something for them both to eat. The man said, "[W]e'll kill two birds with one stone, and I'll go get gas, and I'll be right back." The man never returned. Defendant suspected something was wrong, and he called the police and reported what had occurred. After a police investigation, Defendant was arrested and charged with forgery.
{3} At trial, the State proved that the check belonged to a person named Sami Haddad, whose name was printed on the check. Haddad's checkbook had been stolen. The signature on the check purported to be that of Haddad, but it was not his signature. A videotape showed the transaction at the bank. A detective testified that Defendant had told him that he glanced at the check and was scared and freaked out at the time the check was cashed.
*973 {4} Defendant asserts there was insufficient evidence to convict and that prosecutorial misconduct deprived him of a fair trial. We reverse and remand for a new trial.

DISCUSSION

I. Sufficiency of the Evidence

A. Standard of Review
{5} Substantial evidence required to support a criminal conviction is such evidence that would be acceptable to a reasonable mind as adequate to support the conclusion. State v. Sparks, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App.1985). In analyzing the sufficiency of the evidence, we inquire whether substantial evidence exists, either direct or circumstantial, "to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." State v. Sutphin, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). In doing so, we view the evidence in the light most favorable to the verdict, resolving all conflicts in the evidence and indulging all permissible inferences to be drawn from it in favor of upholding the verdict. State v. Woodward, 121 N.M. 1, 11, 908 P.2d 231, 241 (1995). This Court does not weigh the evidence, nor can we substitute our judgment for that of the jury so long as there is sufficient evidence to support the verdict. State v. Lankford, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978). Nor do we substitute our judgment for that of the fact finder concerning the credibility of witnesses or the weight to be given their testimony. State v. Riggs, 114 N.M. 358, 362-63, 838 P.2d 975, 979-80 (1992). In a case involving circumstantial evidence, "reasonable doubt is not precluded unless [the] circumstantial evidence viewed in the light most favorable to the State gives rise to an equally reasonable inference of innocence." State v. Mora, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

B. The Law of Forgery
{6} Defendant was charged with one count of forgery by violating NMSA 1978, § 30-16-10 (1963), which reads:
Forgery consists of:
A. falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or
B. knowingly issuing or transferring a forged writing with intent to injure or defraud.
Whoever commits forgery is guilty of a third degree felony.
See also State v. Ruffins, 109 N.M. 668, 670, 789 P.2d 616, 618 (1990) (stating that under New Mexico law, a forgery is completed when a defendant "possessing the requisite intent: (1) falsely makes or alters a writing which purports to have legal efficacy; (2) physically delivers a forged writing; or (3) passes an interest in a forged writing"). In the present case, the jury was instructed that for it to find Defendant guilty of forgery, the State must prove that "[D]efendant gave or delivered to Bank of the Rio Grande a check knowing it to have a false signature intending to injure, deceive or cheat Bank of the Rio Grande or another[.]"

C. Sufficient Evidence for Conviction
{7} Defendant contends the State failed to prove beyond a reasonable doubt that he knew the signature on the check was false and that he cashed the check with the specific intent to injure, deceive, or cheat the bank. Recognizing that knowledge and intent can be established by circumstantial evidence, Defendant argues that the evidence did not rise to the level of certainty required by the burden of proof imposed on the State. See State v. Wynn, 2001-NMCA-020, ¶¶ 5, 7, 130 N.M. 381, 24 P.3d 816.
{8} In Wynn, the defendant was charged with the specific-intent crime of aggravated battery. Id. ¶ 4. The State presented only circumstantial evidence of intent in its attempt to prove that the defendant, in smashing a window with his fist, intended to harm his ex-wife by causing the glass to cut her. Id. ¶¶ 7-11. The evidence was uncontradicted that the defendant never threatened the victim; thus, the only evidence to support intent was the victim's location near the window at the time the defendant smashed it. Id. ¶ 11. We determined that we could not disregard the uncontradicted evidence, and the evidence left was insufficient to permit a *974 fact finder to conclude "that the inference of intent was sufficiently compelling to establish intent to harm beyond a reasonable doubt." Id.
{9} Defendant argues that he was found guilty simply because he cashed the check. According to Defendant, the fact that he "glanced" at the check, and the fact that he was scared at one point, did not permit an inference that he knew the check was forged or that he intended to injure or deceive the bank. Defendant argues that there was no evidence that he noticed the name on the check, and even if he did, there was still no evidence that he knew the man who signed the check was not Sami Haddad because he was not even sure of the man's name, since "people often go by nicknames." Defendant further argues that it can be inferred that he did not know the check was forged from the uncontradicted evidence that he used his own name and license information in cashing the check, and he called the police when he suspected something was wrong. The most that can be gleaned from the facts, Defendant asserts, is that he lacked good judgment.
{10} Looking at the evidence in the light most favorable to the verdict, resolving all conflicts in the evidence and indulging all permissible inferences to be drawn from the verdict in favor of upholding it, we hold there was substantial evidence to support a verdict of guilty and that a rational jury could have found that Defendant committed the crime of forgery. Compare State v. Hermosillo, 88 N.M. 424, 425-26, 540 P.2d 1313, 1314-15 (Ct.App.1975) (concluding that there was not substantial evidence to support the defendant's conviction for forgery because there was no evidence of knowledge where the only evidence was that the defendant was present in a car with the forger when the forger cashed the checks at a bank drive-up window), with State v. Martinez, 85 N.M. 198, 200, 510 P.2d 916, 918 (Ct.App.1973) (concluding that there was substantial evidence to support conviction for forgery where, when asked by the bank teller if the woman who wrote the check was the check owner, he said that she was and he signed the checks with her).
{11} Defendant knew the man as Jimmy or Santiago, but the signature on the check did not show either of these names. Rather, the signature showed Sami Haddad. Defendant "glanced" at the check. The jury could reasonably infer that Defendant knew the check had a false signature.

II. Prosecutorial Misconduct
{12} Defendant argues that the State resorted to numerous improper tactics which deprived him of his constitutional right to a fair trial. Defendant cites six such instances of alleged prosecutorial misconduct. Defendant also urges us to apply the doctrines of fundamental and cumulative error. See State v. Duffy, 1998-NMSC-014, ¶ 47, 126 N.M. 132, 967 P.2d 807 (discussing fundamental error and cumulative error).

A. Standard of Review
{13} When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we will not disturb the trial court's ruling on the issue absent an abuse of discretion. State v. Trujillo, 2002-NMSC-005, ¶ 49, 131 N.M. 709, 42 P.3d 814. When an issue has not been properly preserved at trial, we have discretion to review the claim on appeal for fundamental error. Id. ¶ 52; see Rule 12-216(B)(2) NMRA. Our Supreme Court has held that prosecutorial misconduct amounts to fundamental error when it is "so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." State v. Allen, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). "The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." State v. Lucero, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993) (internal quotation marks and citation omitted). However, "[a]n isolated, minor impropriety ordinarily is not sufficient to warrant reversal, because a fair trial is not necessarily a perfect one." Allen, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 *975 P.2d 728 (internal quotation marks and citation omitted).
{14} Under the doctrine of cumulative error, "[w]e must reverse a conviction when the cumulative impact of errors [that] occurred at trial was so prejudicial that the defendant was deprived of a fair trial." State v. Ashley, 1997-NMSC-049, ¶ 21, 124 N.M. 1, 946 P.2d 205 (internal quotation marks and citation omitted). In New Mexico, the doctrine of cumulative error is strictly applied. State v. Martin, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). It cannot be applied when "the record as a whole demonstrates that a defendant received a fair trial." Id. With the foregoing in mind, we examine each of Defendant's claims to determine whether they individually or collectively deprived Defendant of his right to a fair trial.

1. The Prosecutor's Misstatement of the Law
{15} The particular instance of claimed prosecutorial misconduct that we find most egregious is the prosecutor's misstatement of the law in this case. During closing argument, the prosecutor made the following argument.
So the issue is, did he know it was a false signature? Not his signature, the signature on the front of the check where it says Sami Haddad. Did he know that was the wrong signature? . . .
So did he know? Here's what he knew, according to his story; that 10, 15 minutes, some short time before they go to the bank, he's in line at the soup kitchen, somebody comes up to him he doesn't know, hasn't seen him before, "Want to make some money, $75 or $100, for yard work?"
And this person, this stranger, when they get in the car, asked him for his I.D. He gives it to him. . . .
This stranger then writes this check out to the defendant and signs the name Sami Haddad. Sami Haddad is the owner of the check. That's what's preprinted by the bank.
The defendant takes this check and cashes it, but what does he know when he cashes it? He knows the man's name is Jimmy or Santiago, not Sami Haddad. Despite that fact, despite the fact that he had known this man 10 or 15 minutes, he gets a check for $315 before he ever does any yard work, he goes into the bank and cashes a check that was signed by the person who gave him another name.

Did he know? You bet he did. He had a duty to know. What did he tell you? What did he tell the officer? He told him, "I glanced at it. I was scared. I was freaked out."
. . . .

Did he know? How could he not have? He has a duty to. If you're involved in a crime, and you're freaked out and scared, you have a duty to do more than glance at a check.

(Emphasis added.) Defendant did not object or otherwise preserve a claim of error.
{16} In general, where there is overwhelming evidence of a defendant's guilt, we will not find fundamental error even though a prosecutor has incorrectly stated the law. See Duffy, 1998-NMSC-014, ¶ 59, 126 N.M. 132, 967 P.2d 807. Three cases in which we have discussed the proper remedy when the prosecutor misstates the law are instructive. In State v. Gonzales, 105 N.M. 238, 239-41, 731 P.2d 381, 382-84 (Ct.App.1986), the State appealed from the trial court's grant of a new trial on the basis of alleged prosecutorial misconduct that included, among other instances, a misstatement of the law. Thus, this case was reviewed under the abuse of discretion standard, not the fundamental error standard. Nonetheless, we applied the overwhelming-evidence test, holding that the trial court did not abuse its discretion in granting the new trial where the "prosecutor made a legally incorrect statement of the law" and "[t]he evidence of guilt [was] not overwhelming." Id. at 242, 731 P.2d at 385 (internal quotation marks omitted).
{17} In Duffy, our Supreme Court held that an alleged improper statement of the law by the prosecutor was not a misleading misstatement of the law, and even if it had been, the evidence of the defendant's guilt was so overwhelming that the error did not rise to the level of fundamental error, nor *976 was there cumulative error. 1998-NMSC-014, ¶¶ 53, 59, 60, 126 N.M. 132, 967 P.2d 807. Duffy involved a robbery resulting in the death of the victim where there were many eye witnesses. Id. ¶¶ 2, 3. There the prosecutor had stated that the jury could convict the defendant on both second degree murder and felony murder. Id. ¶ 52. While the court recognized that "[c]ounsel may not misstate the law," id. ¶ 53 (internal quotation marks and citation omitted), the Supreme Court reasoned that "any improprieties on the part of the prosecution are outweighed by the overwhelming evidence" of the defendant's guilt. Id. ¶ 59. Further, the Court concluded that since it had found no error, it could not find cumulative error. Id. ¶ 60.
{18} The only New Mexico case which has found that the cumulative impact of a prosecutor's misstatement of the law, in addition to other misconduct, amounted to fundamental error is State v. Diaz, 100 N.M. 210, 215, 668 P.2d 326, 331 (Ct.App.1983). In that case, the prosecutor misstated the law by stating that "in order to establish the intoxication defense[,] the defendant would have to produce expert testimony." Id. at 214, 668 P.2d at 330. Further, the prosecutor argued that a verdict of not guilty would send a message to the community encouraging similar crimes. Id. We reasoned that the prosecutor, by this comment, was "telling the jury in effect to disregard the defense [of intoxication] even if they [found] it meritorious." Id. We stated that "[s]pecific intent [was] an essential element of the crimes" in issue and found that the prosecutor's comment misstated the law. Id. We concluded that the cumulative impact of the comment, in addition to the State's improper reference to the authority of the prosecutor and improper comments on the character of the defendant, amounted to fundamental error. Id. at 215, 668 P.2d at 331.
{19} In the case at hand, we believe that the prosecutor's comments were incorrect statements of the law and that they fall closer to the statements in Diaz than to those in Duffy or Gonzales. According to the forgery statute, the appropriate mens rea is that the defendant have actual knowledge that the document is a forgery. § 30-16-10(B); see State v. Baca, 1997-NMSC-018, ¶¶ 15-17, 123 N.M. 124, 934 P.2d 1053 (analyzing whether there was sufficient evidence of knowledge in a forgery prosecution and concluding that the jury could infer that the defendant "actually knew the checks were forged when he negotiated them"). The statute does not criminalize a negligent state of mind, in which a defendant should know or has a duty to investigate whether the signer of the check is actually the owner of the check. Nor does the statute criminalize even a reckless state of mind, where a defendant acts in careless disregard of whether the signer of the check is its owner, by, for example, not refusing to cash a check despite some confusion about the signer's actual name.
{20} We believe that the State's arguments that Defendant "had a duty to know" that the check was forged and that he "ha[d] a duty to do more than glance at [the] check" lowered the State's burden of proof as to the essential element of the mens rea of Defendant. This misstatement of the law becomes even more prejudicial to Defendant where this is the only issue contested by Defendant and where, as here, the evidence that Defendant knew that the check was forged is not overwhelming. The only evidence of Defendant's knowledge was that he was told the man's name was Jimmy or Santiago, he glanced at the check, and he felt scared. While earlier in this opinion we held that there was substantial evidence of guilt based on this evidence, we do not believe the evidence was overwhelming. In light of the prosecutor's misstatement of the essential element of Defendant's state of mind, we cannot be sure that the jury actually found that Defendant knew the check was forged. The jury may have concluded that Defendant should have known the check was forged. We believe that there is a "reasonable probability that the conviction was swayed by the misconduct." Duffy, 1998-NMSC-014, ¶ 59, 126 N.M. 132, 967 P.2d 807. This misstatement of the law is similar to that in Diaz, in which we concluded that there was cumulative error in part based on the prosecutor's misstatement of the essential element of intent. Diaz, 100 N.M. at 215, 668 P.2d at 331.
*977 {21} We believed that the misstatements likely had such a persuasive effect as to cause the jury to convict the defendant based on a less than criminal state of mind. See Allen, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (stating that we will only find fundamental error where the conduct is "so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial" (internal quotation marks and citation omitted)). We turn to the other claims of prosecutorial misconduct to determine whether the other instances of alleged misconduct were actually misconduct and whether the cumulative effect of this conduct deprived Defendant of a fair trial.

2. The Prosecutor's Comments on Defendant's Right Not to Testify
{22} During the State's closing arguments, the prosecutor told the jury, "[Y]ou're not getting the whole story. There's more to the story than he's told the police." Defendant immediately objected and the court sustained the objection on the basis that it violated Defendant's Fifth Amendment right to silence. Defendant stated, "Is there any way we can cure that, Your Honor?" The court responded, "[W]e'll proceed along." On appeal, Defendant argues that the State improperly commented on Defendant's right not to testify both inside and outside of court, and that because no curative step was taken, the prejudice from the remark remained unremedied.
{23} In State v. Foster, we stated that there are "three independent underpinnings" for the "rule forbidding a prosecutor from commenting on a defendant's silence." 1998-NMCA-163, ¶ 9, 126 N.M. 177, 967 P.2d 852. The first is the "constitutional privilege against self-incrimination," which "prohibits the prosecutor from commenting on a defendant's failure to testify at trial." Id. ¶¶ 9, 10. The second is due process, stemming from Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which forbids a prosecutor from commenting on a defendant's silence after receiving Miranda warnings in an attempt to incriminate the defendant. Foster, 1998-NMCA-163, ¶¶ 9, 11, 14, 126 N.M. 177, 967 P.2d 852. The third is the Rules of Evidence, particularly Rules 11-402 and -403 NMRA, which forbid the use of irrelevant evidence or relevant evidence when the probative value of the evidence is substantially outweighed by it's prejudicial value. Foster, 1998-NMCA-163, ¶¶ 9, 12, 126 N.M. 177, 967 P.2d 852.
{24} In this case, the State was permitted to argue that Defendant did not give the whole story to the police. See id. ¶ 14. Defendant did not invoke his right to silence after receiving his Miranda warnings. Because Defendant did not invoke his right to remain silent while being questioned by the police, the State did not impermissibly comment on his silence with respect to his communications with the police. As we stated in Foster, "[t]he Miranda warnings do not imply that the arrestee's half-truths will carry no penalty." Id.
{25} We are more concerned about the prosecutor's comment to the jury that "you're not getting the whole story." This comment may have been interpreted by the jury as implying that if Defendant were innocent, he would have testified at trial and told the "whole story." To the extent that the jury may have interpreted the comment this way, it was an impermissible comment on Defendant's right not to testify. State v. Miller, 76 N.M. 62, 70, 412 P.2d 240, 245 (1966) (holding that, under the Fifth Amendment, a prosecutor may not comment on a defendant's silence as evidence of guilt); see also State v. La Madrid, 1997-NMCA-057, ¶¶ 9-10, 123 N.M. 463, 943 P.2d 110 (finding no impermissible comment on the defendant's failure to testify).
{26} While the court did sustain Defendant's objection, the court did not take any steps to remedy this error. While this error alone may have been harmless, we will still look at the effect that this error may have had when combined with the other errors in our cumulative error analysis.

3. Mischaracterization of the Stipulated Facts
{27} During its rebuttal argument, the State made the following argument, and, again, Defendant did not object:

*978 Did [Defendant] intend to cheat or deceive Bank of the Rio Grande? . . . It comes back to the stipulations by the parties in State's Exhibit No. 1. Did he sign his name on the back of the check? Yes. Did he look at the front of the check? Yes. Is it plainly evident from the front of the check . . . whose check it was? Did he know who the individual giving him the check was? Yes.

(Emphasis added.)
{28} Defendant asserts that the State misstated the stipulated facts. We agree. Defendant stipulated that he signed the back of the check; however, he did not stipulate that he looked at the front of the check. The only evidence about Defendant looking at the check was not in the stipulated facts but, rather, was presented by Detective Craig Buckingham, who, after refreshing his recollection with a written report, testified that Defendant told him that he glanced at the check, without specifying whether Defendant said he looked at the front or the back of the check. Further, there was no stipulation that Defendant knew "who the individual giving him the check was." However, because Defendant did not object to these mischaracterizations of stipulated facts, the question becomes whether this error amounted to fundamental error, that is, whether it was so egregious and prejudicial as to deprive Defendant of a fair trial, or whether it was an isolated and minor impropriety. See Allen, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728.
{29} We do not believe that the prosecutor's misstatements, by themselves, prejudiced Defendant enough to deprive him of a fair trial. The jury was read the actual stipulations, though it is unclear whether the jury received them as an exhibit. While the jury may have believed that Defendant stipulated to and agreed that he looked at the front of the check and knew that Jimmy or Santiago was not Mr. Haddad, we are not convinced that this error alone "had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." Id. (internal quotation marks and citation omitted). However a prosecutor has a duty not to misstate the facts, and even if the prosecutor simply by accident failed to clarify that the only stipulated fact of those mentioned was that Defendant signed the back of the check, such a careless mistake can be an ingredient in a cumulative error analysis. Thus, we reserve this instance of misconduct as one to consider among the other instances of claimed prosecutorial misconduct that may add up to cumulative error depriving Defendant of a fair trial. See Duffy, 1998-NMSC-014, ¶ 47, 126 N.M. 132, 967 P.2d 807 ("[U]nder the doctrine of cumulative error, a series of lesser prosecutorial improprieties may amount to reversible error.").

4. Prejudicial Comments During Voir Dire
{30} Defendant asserts that the prosecutor's questions during voir dire about potential jurors' sympathy for the homeless led to the implication that the homeless have "more tendency" to commit crimes. The following exchange between the prosecutor and a potential juror took place during voir dire:
[Q:] How many people feel sorry for the homeless? Go ahead and raise your hand. . . .
Does it make a difference, or will it make a difference to you if [D]efendant is homeless or was homeless at the time or at least down and out on his luck and having to get food from a shelter, or a soup kitchen . . . ? Does that matter to anybody?
. . . .
[A:] . . . . I just feel terrible about people who are in that situation.
. . . .
[Q:] Do you think it's okay for a person to commit a crime if he's down and out on his luck?
[A:] If you're down that far, you have more tendency, I believe.
Defense counsel objected to this line of questioning as inflammatory. The court instructed the prosecutor to "wrap it up" by asking the juror if he was going to have any feelings of sympathy for Defendant. Defendant argues that this line of questioning was aimed at improperly appealing to the passions and prejudices of the jury. See Ashley, 1997-NMSC-049, ¶ 15, 124 N.M. 1, 946 P.2d 205.
*979 {31} We disagree. Given the facts of this case, it was not improper for the prosecutor to explore the biases of the jury panel with regard to the homeless. The prosecutor's question appears to have been an attempt to determine whether any of the potential jurors would have refused to convict a person simply because he or she is homeless, even though the State may prove beyond a reasonable doubt that the person committed a crime. The question did not call for the juror's answer or any speculation on whether homeless people are more likely to commit a crime. Thus, we hold there was no misconduct here, especially because once the juror's statement was given, the court required the State to ask an appropriate question and move away from the question of whether those who are homeless are predisposed to committing crimes.

5. Alleged Improper Argument by Prosecutor During Opening Statement
{32} Defendant next asserts that the State presented arguments during its opening statement by implying that if Defendant had been innocent, he would have asked more questions about the check before agreeing to cash it. The prosecutor said the following during opening statement:
[T]his guy that [D]efendant has known for ten minutes . . . asked [D]efendant for his I.D . . . . and writes a check out to [Defendant] and asks him to go inside the bank and cash it. And [Defendant] doesn't ask him why; he doesn't inquire as to who he's cashing it for. . . .
Even were these statements considered closer to argument than to factual recitation, we do not believe that the statements were consequential in the least. Defense counsel objected and the court instructed the prosecutor to limit her opening statement to what the State anticipated the evidence would show. "An opening statement is intended to serve as a preview of the evidence to be admitted by one or both of the parties." State v. Gilbert, 99 N.M. 316, 319, 657 P.2d 1165, 1168 (1982). Even had the comments by the prosecutor been in the gray area between facts and argument, in our view no misconduct occurred based on these statements.

6. Prosecutor Allegedly Eliciting Inadmissible Statements on Direct Examination
{33} Prior to the trial, Defendant moved to have any mention of the burglary of Mr. Haddad's home excluded from evidence. The State noted that it did not intend to produce any evidence along that line. The State's principal witness, Detective Buckingham, was present during this exchange. During the State's direct examination of Detective Buckingham, the following dialogue ensued:
Q: Did you come to investigate an occurrence from September 18, 2002?
A: Yes, I did.
Q: Tell us what happened.
A: I was assigned a report taken by the initial responding deputy in reference to a burglary that happened out on Carver Road.
{34} At this point, Defendant objected. The court instructed the jury to disregard the last answer from the witness. Defendant argues on appeal that, under State v. Ruiz, 2003-NMCA-069, ¶ 11, 133 N.M. 717, 68 P.3d 957, we should conclude that this reference to inadmissible evidence warrants reversal.
{35} We disagree with Defendant. In Ruiz, we held that where the prosecutor purposefully elicited testimony regarding a defendant's prior conviction and where there was a "reasonable probability that the improperly admitted evidence could have induced the jury's verdict," we were required to reverse. Id. ¶¶ 9-11. We explicitly acknowledged that "if inadvertent admission of evidence of prior crimes is error, the prompt sustaining of an objection and an admonition to disregard the witness's answer cures any prejudicial effect of the inadmissible testimony." Id. ¶ 6.
{36} In this case, unlike in Ruiz, it is not clear that the State intended to elicit the reference to the burglary investigation. Cf. id. ¶¶ 8-9. Further, the Detective's testimony in this case was not about any past crimes or wrong acts of Defendant, as was the testimony *980 in Ruiz. Id. ¶¶ 4-5. We refuse to conclude that the jury would have been swayed in their verdict by this testimony simply referring to a burglary that happened earlier that day without the Detective connecting the burglary in any way to Defendant. We hold that there was no error, nor any prejudice, as a result of this testimony.

7. Cumulative Error
{37} We hold that the cumulative effect of prosecutorial conduct in this case rose to a level which deprived Defendant of a fair trial. See Diaz, 100 N.M. at 215, 668 P.2d at 331. As we discussed earlier in the opinion, the prejudicial effect of the prosecutor's misstatement of the law was likely to have swayed the verdict in this case because the evidence that Defendant knew the check was forged was not overwhelming. The statement of the law advanced by the State, which in essence lowered the State's burden of proof on the mens rea element from knowing to negligence or recklessness, was alone substantial cause for concern about the validity of the verdict. When we consider, on top of that, the prejudice from the State's misstatement of the stipulated facts and the State's insufficiently cured comments on Defendant's refusal to testify at trial, we conclude that the cumulative effect of all these errors denied Defendant a fair trial.

CONCLUSION
{38} We hold that while there was substantial evidence of Defendant's guilt, the evidence of his guilt was not overwhelming and thus there is a reasonable probability that the conviction was swayed by the misconduct of the prosecutor in this case. We reverse and remand for a new trial.
{39} IT IS SO ORDERED.
WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and CELIA FOY CASTILLO, Judge.