This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39938**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**YSIDRO ROBERT GARCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jennifer J. Wernersbach, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Erica Schiff, Assistant Attorney General
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Ysidro Robert Garcia appeals his conviction for receiving or transferring a stolen vehicle in violation of NMSA 1978, Section 30-16D-4(A) (2009). Defendant argues that during trial the State improperly elicited testimony from a witness that Defendant invoked his right to counsel during a postarrest interview. Defendant

seeks reversal of his conviction and a bar on retrial under the Double Jeopardy Clause of the New Mexico Constitution. For reasons set forth below, we affirm.

## DISCUSSION

**{2}** This case comes before us for the second time. *See State v. Garcia* (*Garcia I*), 2020-NMCA-024, 463 P.3d 483. Because the general facts and background are explained in *Garcia I*, ¶¶ 2-8, we reference only those facts pertinent to this appeal. *Garcia I* required us to address the timeliness of Defendant's motion to reconsider a ruling regarding mistrial, a motion which we concluded to have been untimely. *Id.* ¶¶ 13-15. We reversed the district court's contrary determination and remanded for resentencing. *Id.* ¶ 16. Thus, we did not consider the propriety of the State-elicited testimony, which prompted Defendant's request for a mistrial in the first place. We now conclude that such testimony, provided by the investigating detective during the State's case-in-chief, indeed constituted an improper comment upon Defendant's invocation of his right to counsel. Under applicable jurisprudence considered in light of the facts of this case, however, we determine the comment to have been harmless, and therefore decline to reverse Defendant's conviction or resolve his argument regarding the propriety of retrial.

**{3}** At trial, the following exchange occurred between the prosecutor and lead detective:

> Q:     What did [D]efendant tell you in the interview room?

> A:     I did read him the advice of rights. [Defendant] said he did understand. [Defendant] did sign the form and [stated that] he wished to speak to his attorney.

Defense counsel immediately objected, and the questioning ceased there. The district court sustained defense counsel's objection and promptly issued a curative instruction admonishing jurors that they "may not draw any inference at all about the testimony you heard that [Defendant] asked for an attorney."

**{4}** Our review of prosecutorial commentary or state-elicited testimony regarding a criminal defendant's refusal to speak with police consists of two parts.1 *State v. Costillo*, 2020-NMCA-051, ¶ 6, 475 P.3d 803. First, "we review de novo the legal question whether the prosecutor improperly commented on the defendant's silence." *Id.* (text only) (citation omitted). Second, if such impropriety occurred and was properly objected to at trial, we must "determine whether the error is harmless beyond a reasonable

---

1A criminal defendant's assertion of his or her right to remain silent and to speak with counsel are treated without distinction in the context of allegedly improper discussion at trial. *See, e.g., State v. McDowell*, 2018-NMSC-008, ¶ 18, 411 P.3d 337 (stating that the court will apply the same analysis to instances in which a prosecutor elicits testimony about a defendant's assertion of his right to remain silent and his right to an attorney); *State v. Callaway*, 1978-NMSC-070, ¶¶ 10-11, 92 N.M. 80, 582 P.2d 1293 (discussing in unison commentary on the invocation of both rights). We, therefore, draw on case law referencing allegedly improper discussion of a defendant's assertion of either right.

doubt." *State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156. It is the State's burden to prove harmlessness. *Id.* Constitutional error, such as commenting on a criminal defendant's exercise of his right to counsel, is not "harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* (internal quotation marks and citation omitted).

{5}      The detective's testimony regarding Defendant's assertion of his right to counsel was indeed improper. *See State v. Smith*, 2001-NMSC-004, ¶ 32, 130 N.M. 117, 19 P.3d 254 ("Evidence of a defendant's postarrest silence is generally inadmissible."). In making this determination, we consider "whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's exercise of his or her right to remain silent." *Costillo*, 2020-NMCA-051, ¶ 15 (internal quotation marks and citation omitted). While the prosecutor told the district judge he did not intend to elicit the detective's testimony, the statement directly addressed Defendant's assertion of his right to an attorney, and the jury could only naturally conclude such a statement to "be a comment on the accused's exercise of his or her right to remain silent." *Id.* ¶ 15 (internal quotation marks and citation omitted). We, therefore, conclude that the testimony improperly disclosed Defendant's exercise of his constitutional right to an attorney. We take this opportunity to remind counsel for the State that ignorance of a witness's forthcoming statement is no excuse for prompting improper testimony and caution that such open-ended questions unnecessarily risk running afoul of a defendant's well-established constitutional protections.

{6}      Having so concluded, we turn now to whether such improper testimony requires reversal. While discussion of a defendant's choice not to talk to police is legally taboo, *State v. McDowell*, 2018-NMSC-008, ¶ 4, 411 P.3d 337 ("New Mexico courts have long held that a prosecutor is prohibited from commenting on a defendant's right to remain silent."), not all such improper commentary necessarily justifies declaration of a mistrial or reversal of a conviction on appeal. *State v. Molina*, 1984-NMSC-038, ¶ 5, 101 N.M. 146, 679 P.2d 814 ("It is not true, however, that *any* comment on the defendant's silence must result in a mistrial, or a reversal of the defendant's conviction." (internal quotation marks and citation omitted)). "In assessing the impact of the prosecutor's statement, we examine the context in which it was made." *Gutierrez*, 2007-NMSC-033, ¶ 20. Questions that "invite[] the jury to draw a negative inference from the defendant's failure to make an additional statement after his arrest" are particularly harmful. *State v. DeGraff*, 2006-NMSC-011, ¶¶ 9-10, 139 N.M. 211, 131 P.3d 61. In determining if a comment on a defendant's silence requires reversal of his conviction, "[o]ur focus must remain squarely on assessing the likely impact of the error on the jury's verdict." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 32, 136 N.M. 309, 98 P.3d 699. While properly admitted evidence is a factor in our review, *id.*, "[w]e take care not to focus our harmless error analysis exclusively on whether the trial record consisted of overwhelming evidence of the defendant's guilt, so as not to risk inadvertently concluding [the] constitutional error was harmless simply because there was substantial evidence to support the conviction." *Gutierrez*, 2007-NMSC-033, ¶ 18 (internal quotation marks and citation omitted).

**{7}**     Our precedent contains several factors useful to determining when a prosecutorial comment on a defendant's silence constitutes reversible error. First, reversal of a defendant's conviction is more likely when the prosecutor directly comments on the defendant's refusal to speak with police than when testimony regarding the same is inadvertently elicited from a witness. *See DeGraff*, 2006-NMSC-011, ¶ 8 ("We have recognized that indirect comments, both those that are ambiguous, and those inadvertently elicited by the prosecutor from a witness, are less likely to call a jury's attention to the defendant's exercise of his rights." (internal citation omitted)); *State v. Baca*, 1976-NMSC-015, ¶ 5, 89 N.M. 204, 549 P.2d 282 ("We would draw the line between those comments which can be directly attributed to the prosecutor and those comments incorporated within the testimony of a witness."). Further, where a prosecutor asks the jury to infer guilt from a defendant's silence, either expressly or through implication, reversal of a conviction is more likely. *Cf. DeGraff*, 2006-NMSC-011, ¶ 23 (considering as part of fundamental error analysis that "the comments did not directly call on the jury to infer guilt from [the d]efendant's silence"); *State v. Allen*, 2000-NMSC-002, ¶ 30, 128 N.M. 482, 994 P.2d 728 (concluding that, because the prosecutor "did not argue to the jury that they should infer [the d]efendant's guilt from [his silence]," the testimony did "not involve the kind of reference to a defendant's silence that would require reversal under the doctrine of plain or fundamental error"). Repeated commentary about the defendant's silence or otherwise emphasizing his refusal to speak also likely results in reversal. *See Costillo*, 2020-NMCA-051, ¶ 19 ("[T]he commentary was trial-spanning and suggestive of guilt."). Finally, evidence of guilt apart from the challenged testimony or commentary may remain relevant "in evaluating the likely impact on the jury of the constitutional error." *Alvarez-Lopez*, 2004-NMSC-030, ¶ 32.

**{8}**     In a harmless error analysis, we reverse "the conviction unless the [s]tate can demonstrate that the error was harmless beyond a reasonable doubt." *McDowell*, 2018-NMSC-008, ¶ 7 (internal quotation marks and citation omitted). We conclude that the State has met its burden. To begin, the State correctly argues that "the jury was never asked to draw an adverse inference from his refusal to speak with police." We agree. The testimony at issue in this case consists of one question from the prosecutor that did not mention silence or invocation of the right to counsel and an answer from the State's lead detective stating that Defendant understood his rights, signed the form, and "wished to speak with [an] attorney." As opposed to *McDowell*, 2018-NMSC-008, ¶ 6, the prosecutor here did not ask directly whether Defendant asserted his right to counsel or otherwise emphasize the consequences of that choice. The State made no argument, implicit or otherwise, that Defendant's refusal to speak corroborates his guilt. Moreover, Defendant's silence was never mentioned again throughout the trial. The State is correct in characterizing the testimony as a "passing reference[] to evidence that should not be referenced."

**{9}**     Second, the court's curative instruction provided immediately after the detective's statement sufficiently addressed any negative inference the jury may have made. Defendant argues that the curative instruction did more harm than good by calling the jury's attention to the detective's comment. We find that assertion unpersuasive. *See*

*State v. Dirickson*, ___-NMCA-___, ¶ 29, ___ P.3d ___ (A-1-CA-40149, Apr. 28, 2023) ("[G]enerally, a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." (internal quotation marks and citation omitted)). The same logic would apply equally to the general jury instruction—also given in this case—that jurors may not draw any negative inference from the fact that a defendant chose not to testify at trial. Such an instruction undoubtedly draws attention to a defendant's assertion of a constitutional right but is consistently given in criminal cases. The State points out that we have made this comparison in a similar context in the past:

> After all, the jury is well aware that the defendant has not testified. They do not need the prosecutor to inform them of that fact. What *is* important is that the jury know that they should not draw an adverse inference from the defendant's failure to testify. Therefore, when the prosecutor makes a comment such as the one in this case, a proper instruction from the court can cure any potential harm that may have arisen from the prosecutor's pointing out that the defendant failed to testify.

*State v. La Madrid*, 1997-NMCA-057, ¶ 12, 123 N.M. 463, 943 P.2d 110. Defendant relies on two cases, *Gutierrez*, 2007-NMSC-033 and *State v. Garcia*, 1994-NMCA-147, 118 N.M. 773, 887 P.2d 767, to assert that "curative instructions cannot generally cure the prejudice of a comment on silence." However, both cases merely recognize that the instructions given were insufficient to cure the remarks made *in those cases*. *See Gutierrez*, 2007-NMSC-033, ¶ 23 ("Neither the instruction given, nor a more explicit one, would have sufficed to cure the error introduced by the prosecutor's comment in this case."); *Garcia*, 1994-NMCA-147, ¶ 18 ("That is not to say that the giving of a curative instruction is irrelevant. . . . Here, however, neither the instruction given, nor any more explicit instruction, would have sufficed to save the verdict."). Unlike this case, those cases involved either (1) use of a defendant's silence to "impeach an explanation subsequently offered at trial," *id.* ¶ 13 (internal quotation marks and citation omitted), or (2) a comment made directly by the prosecutor at critical juncture of the trial proceeding, such as opening statements, *see Gutierrez*, 2007-NMSC-033, ¶¶ 20-23.

**{10}**    Finally, given the nature of the evidence presented against Defendant, the challenged testimony likely had minimal impact on the jury's verdict. While overwhelming evidence of guilt cannot be our sole focus in such circumstances, *see id.* ¶ 18, it is nonetheless a factor in our analysis to assess "the likely impact of the error on the jury's verdict." *Id.* (internal quotation marks and citation omitted). The State points out that Defendant was caught driving a stolen motorcycle that had no license plate attached and an ignition mechanism that was clearly tampered with. The detective testified that the ignition mechanism had no key tumbler present, but instead revealed a quarter-sized hole where the key was normally inserted. Defendant had pieces of the ignition in his pocket at the time of his arrest, and when he was first stopped by the police, he stated, "I knew the damn thing was stolen." Defendant also had a set of keys in his pocket, none of which corresponded to the stolen motorcycle, that were filed down

"so that they would fit in any key receiver." The investigating detective testified that such keys are typically used in "an attempt to force entry into a vehicle."

**{11}** We agree with the State that the context surrounding the improper testimony, the passing nature in which it was mentioned along with the court's curative instruction, and the nature of the evidence against Defendant all demonstrate that any prejudice Defendant may have suffered was "harmless beyond a reasonable doubt." *McDowell*, 2018-NMSC-008, ¶ 7 (internal quotation marks and citation omitted). Because we affirm Defendant's conviction on this basis, we decline to address Defendant's argument regarding retrial.

**CONCLUSION**

**{12}** For the above reasons, we affirm.

**{13}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**KATHERINE A. WRAY, Judge**