2006-NMSC-011

131 P.3d 61

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Steven DeGRAFF, Defendant–Appellant.**

No. 28,306.

Supreme Court of New Mexico.

Feb. 28, 2006.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

MINZNER, Justice.

{1} Following a jury trial, Defendant Steven DeGraff was convicted of: felony murder, contrary to NMSA 1978, § 30–2–1(A)(2) (1994); armed robbery, contrary to NMSA 1978, § 30–16–2 (1973); aggravated burglary, contrary to NMSA 1978, § 30–16–4 (1963); and five counts of tampering with evidence, contrary to NMSA 1978, § 30–22–5 (1963, prior to 2003 amendment). The district court dismissed the armed robbery conviction as the predicate felony underlying Defendant's felony murder conviction. On appeal, Defendant argues that because the prosecutor asked the jury to draw an inference of guilt from his failure to tell the police he acted in self-defense, he was denied due process contrary to the Fifth Amendment, and he is entitled to a new trial. He also argues that he has been subject to multiple punishments, contrary to the Double Jeopardy Clause of the Fifth Amendment, and he is entitled to an amended judgment and sentence, because (1) his convictions for both aggravated burglary and felony murder are based on the same conduct, and (2) his convictions for tampering with evidence are based on a continuous course of conduct.

{2} Because the prosecutor's comments did not amount to fundamental error, we affirm the felony murder conviction. Nevertheless, we take this opportunity to clarify our approach to unpreserved claims that a prosecutor has commented on a defendant's silence. We conclude that the felony murder and aggravated burglary convictions are not based on the same conduct and affirm both convictions. Because we conclude that three convictions for tampering with evidence are based on a single course of conduct and the Legislature did not intend to impose multiple punishments for this conduct, we remand

with instructions to dismiss two of the tampering convictions.

## I. BACKGROUND

{3} Sometime in the evening of December 7, 2001, Father Michael Mack was killed in his home. Investigators found that he had been hit on the head numerous times with a hammer and a glass or crystal object. He had also been stabbed in the neck at least eight times with a knife. Defendant was arrested for unrelated auto theft charges by the Pojoaque Tribal Police on December 16, 2001, and remained in custody from December 16 to December 28.[1] On December 28, 2001, Defendant gave a voluntary statement to the investigating officers. Defendant admitted that he was at the victim's home and was responsible for the victim's death, but Defendant explained that he was defending himself from sexual advances. After the attack, Defendant picked up the knife, glass, and hammer he had used as weapons, and he fled in the victim's car. Defendant threw the knife, glass, and hammer out of the car on the highway. On the next day he abandoned the car and returned to his house. While he was at his home, he changed out of the clothes he had worn during the attack, leaving the clothes in a pillowcase in a grey van outside the house.

{4} During the State's closing argument, the prosecutor explained that the case "is not so much what [Defendant] did on December 7th but what he did afterward." The prosecutor commented in closing arguments:

> So I'm saying wouldn't a person have called Deputy Baker or Deputy Toya and said "Deputy, something terrible has happened, I'm sorry, I was defending myself from a vicious attack. I'm a victim and I'm calling you now because I want you to know the truth." But that didn't happen in this case, did it? And there's a reason why it didn't happen that way. Because the story that [Defendant] gave is a complete fabrication.

{5} The prosecutor made repeated references in his closing argument to the three weeks between the murder and Defendant's statement to officers. He argued that Defendant had time in those three weeks to fabricate a self-defense story, and that his story was not credible because he did not volunteer it sooner. The defense did not object to these comments at trial.

## II. DISCUSSION

{6} Defendant now argues that these statements were fundamental error and necessitate a new trial. Alternatively, he suggests he is entitled to a remand for entry of an amended judgment and sentence. His arguments primarily raise questions of constitutional law, which we review de novo. *State v. Javier M.*, 2001–NMSC–030, ¶ 17, 131 N.M. 1, 33 P.3d 1. This general rule is particularly relevant when constitutional rights are at issue.

### A. Comment on Silence Claims

{7} We first consider whether the prosecutor commented on Defendant's silence, contrary to his constitutional rights. We then address whether and how Defendant's silence was protected. Finally, we determine whether the comment should be characterized as fundamental error.

### 1. Comment

{8} In *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court held that a defendant's Fifth Amendment privilege is violated in a state court trial when the prosecution asks the jury to draw an adverse conclusion from the defendant's failure to testify. New Mexico courts, following *Griffin*, consider "whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment" on the accused's exercise of his or her right to remain silent. *State v. Clark*, 108 N.M. 288, 302, 772 P.2d 322, 336 (1989), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990). We evaluate the statement in context "to determine the manifest intention that prompted the re-

---

1. The record does not indicate when he was transferred from the custody of the Pojoaque Tribal Police to the Sandoval County Sheriff's Department.

marks, as well as the natural and necessary impact upon the jury." *State v. Isiah,* 109 N.M. 21, 24–25, 781 P.2d 293, 296 (1989), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 863 P.2d 1071 (1993). We have recognized that indirect comments, both those that are ambiguous, and those inadvertently elicited by the prosecutor from a witness, *see State v. Baca,* 89 N.M. 204, 549 P.2d 282 (1976), are less likely to call a jury's attention to the defendant's exercise of his rights. We have considered direct or indirect comments, *Clark,* 108 N.M. at 302, 772 P.2d at 336, and comments addressed both to a defendant's failure to testify and his or her "right to remain silent when taken into custody," *Isiah,* 109 N.M. at 24, 781 P.2d at 296, in each case focusing on the likely impact of the comment on the jury.

{9} Where comments by the prosecutor are ambiguous, we consider what inference the jury was asked to draw from the defendant's silence and the propriety of that inference. For example, in *State v. Garcia,* 118 N.M. 773, 777–78, 887 P.2d 767, 771–72 (Ct.App.1994), a series of questions regarding how suspects normally act when they have an alibi was improper as a matter of due process; the jury was implicitly asked to conclude that the defendant's alibi was fabricated because it was not immediately revealed to the police on arrest. Similarly, a prosecutor's questions regarding a defendant's failure to correct or amend his initial statement to the police were improper because they invited the jury to draw a negative inference from the defendant's failure to make an additional statement after his arrest. *State v. Hennessy,* 114 N.M. 283, 288–89, 837 P.2d 1366, 1371–72 (Ct.App.1992), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 863 P.2d 1071 (1993). *But cf. State v. Foster,* 1998–NMCA–163, ¶¶ 14–15, 126 N.M. 177, 967 P.2d 852 (holding that evidence of a defendant's failure to mention in initial interviews threats made on the day of shooting had significant probative value as impeachment, was admissible as a matter of New Mexico evidentiary law, and did not deny the defendant due process). Although *Foster* and *Hennessy* initially appear contradictory, they illuminate the difference between a permissible comment on a defen-

dant's incomplete statement, as in *Foster,* and commenting on a defendant's silence, as in *Hennessy.* On the facts of this case, we conclude the prosecutor invited the jury to infer guilt from silence.

{10} The prosecutor used Defendant's silence immediately after the attack, and in the following weeks, to suggest that Defendant's explanation was fabricated. In closing argument, the prosecutor repeatedly stated that Defendant had three weeks to fabricate a story and suggested that most people would come forward immediately if they had killed another in self-defense. The prosecution's comments regarding the three weeks between the attack and Defendant's statement were indirect, but the jury was implicitly asked to reject Defendant's self-defense explanation because Defendant did not offer it immediately. We conclude that the prosecutor's statement regarding Defendant's failure to come forward immediately was a comment on Defendant's pre-arrest silence, and the references to the three weeks between the attack and Defendant's statement to police was a comment on both pre-arrest silence and post-arrest silence while he was in the custody of the Pojoaque Tribal Police. We next consider whether and how that silence was protected.

## 2. Protection

{11} There are four relevant time periods at which a defendant may either volunteer a statement or remain silent: before arrest; after arrest, but before the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been given; after *Miranda* warnings have been given; and at trial. The general rule limiting prosecution comment on a defendant's silence is drawn from multiple sources, which are variously applied to each of these time periods. We have recognized that the Fifth Amendment right against self-incrimination, the Due Process Clause, and New Mexico evidentiary rules all limit prosecutorial comment on a defendant's silence. *See Foster,* 1998–NMCA–163, ¶ 9, 126 N.M. 177, 967 P.2d 852. Although we ultimately conclude that this case involves only pre-

arrest and post-*Miranda* periods, we touch on all four briefly because the rules on preservation and the standard of review change with the source of the protection. *See generally Garcia*, 118 N.M. at 776–77, 887 P.2d at 770–71 (distinguishing post-arrest, pre-*Miranda* silence from post-arrest, post-*Miranda* silence).

{12} The Fifth Amendment protects a defendant's decision not to testify at trial from prosecutorial comment. *See Griffin*, 380 U.S. at 613–14, 85 S.Ct. 1229 (describing a state constitutional provision permitting comment on a defendant's silence at trial as a violation of the Fifth Amendment protection against self-incrimination). Similarly, due process guaranteed by the Fifth Amendment protects post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 618–19, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (holding that, in light of the assurance implicit in the *Miranda* warning that silence will carry no penalty, "it would be fundamentally unfair" and a denial of due process protected by the Fourteenth Amendment to allow post-*Miranda* silence to be used in a state criminal trial "to impeach an explanation subsequently offered at trial"). Where a timely objection is made, a mistrial may be required. *See State v. Lopez*, 105 N.M. 538, 544–45, 734 P.2d 778, 784–85 (Ct.App.1986). If a mistrial is denied, a new trial may be ordered on appeal unless the State can show the error is harmless. *Id.* In the absence of a timely objection from a defendant, comments on a defendant's exercise of his or her right not to testify, or right to remain silent, are reviewed for fundamental error. *State v. Allen*, 2000–NMSC–002, ¶ 27, 128 N.M. 482, 994 P.2d 728.

{13} The law regarding post-arrest, pre-*Miranda* silence is less clear. The United States Constitution does not limit the use of post-arrest, pre-*Miranda* silence to impeach a defendant at trial. *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490

(1982). The federal circuits, however, are divided on the question of whether the Fifth Amendment bars the use of a defendant's post-arrest, pre-*Miranda* silence as proof of guilt.[2] The standard of review applicable to post-arrest, pre-*Miranda* situations has not been determined in New Mexico. *See generally State v. Gutierrez*, 2003–NMCA–077, ¶ 10, 133 N.M. 797, 70 P.3d 787 (noting the absence of New Mexico law on this point, and assuming for the appeal that a *Miranda* warning had been given); *Garcia*, 118 N.M. at 777, 887 P.2d at 771 (assuming that the same standard is applied before and after *Miranda* warnings). Rather, we have assumed warnings were given when the record did not permit us to determine whether or not they were given. *Gutierrez*, 2003–NMCA–077, ¶ 10, 133 N.M. 797, 70 P.3d 787. Because we also assume in this case that *Miranda* warnings were given when Defendant was arrested by the Pojoaque Tribal Police, we do not determine the appropriate review of a comment on post-arrest, pre-*Miranda* silence at this time.

{14} We have recognized the general absence of a constitutional limitation on using pre-arrest silence to impeach, *see State v. Gonzales*, 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992), although a suspect's silence is protected if the suspect invokes the right to remain silent in response to non-custodial interrogation. In *Gonzales*, we observed that, based on *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), "the use of a defendant's pre[-]arrest silence to impeach is constitutional." *Gonzales*, 113 N.M. at 229, 824 P.2d at 1031. Nevertheless, any evidence remains subject to normal evidentiary rules and should be excluded where its prejudicial effect substantially outweighs its probative value. *See* Rule 11–403 NMRA 2006.

{15} New Mexico evidentiary rules limited comment on a defendant's si-

---

**2.** *Compare United States v. Velarde-Gomez*, 269 F.3d 1023, 1029 & n. 1, 1033 (9th Cir.2001) (en banc) (reasoning that an "individual has a right to remain silent in the face of government questioning, regardless of whether the *Miranda* warnings are given" and concluding that the trial court erred in permitting comment on a defendant's post-arrest, pre-*Miranda* silence), *with United States v. Frazier*, 408 F.3d 1102, 1111 (8th Cir.2005) (summarizing the holdings of the circuits and holding that use of pre-*Miranda* silence as evidence of guilt does not violate the Fifth Amendment).

lence prior to the Supreme Court's decision in *Doyle. See Baca,* 89 N.M. at 205, 549 P.2d at 283 (reviewing reference by a witness to post-arrest, post-*Miranda* silence as an evidentiary matter); *State v. Lara,* 88 N.M. 233, 539 P.2d 623 (Ct.App.1975) (holding that comments on a defendant's silence were prejudicial, of minimal probative value, and would require reversal). In the absence of controlling federal law, we return to these principles. Because silence is often too ambiguous to have great probative force and may be given improper weight by a jury, evidence of a defendant's silence generally is not admissible as proof of guilt. *See also Garcia v. State,* 103 N.M. 713, 714, 712 P.2d 1375, 1376 (1986) (distinguishing *Jenkins* and holding that pre-arrest refusal to permit a search could not be used as proof of guilt when the defendant did not testify at trial); *Lara,* 88 N.M. at 234–35, 539 P.2d at 624–25 (describing prosecutor's inquiry about a defendant's silence as reversible error if the fact of post-arrest, post-*Miranda* silence lacked "significant probative value"). We have recognized exceptions to this rule when the State can make some additional showing of relevance. *See, e.g., Foster,* 1998–NMCA–163, ¶¶ 12, 15, 126 N.M. 177, 967 P.2d 852 (holding that evidence of omission of exculpatory details in an ostensibly complete statement to police was relevant and admissible for impeachment purposes). We review these evidentiary decisions for abuse of discretion, *Allen,* 2000–NMSC–002, ¶ 17, 128 N.M. 482, 994 P.2d 728, and where no objection is made at trial, limit our review to plain error. *Id.* ¶ 27.

{16} We also have reviewed comments on a defendant's silence as prosecutorial misconduct, *see, e.g., Hennessy,* 114 N.M. at 286, 837 P.2d at 1369, but applied essentially the same fundamental error analysis used in post-arrest comment on silence cases. *Compare Allen,* 2000–NMSC–002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (reviewing a claim of prosecutorial misconduct), *with id.* ¶ 27 (reviewing the effect of a comment on silence). Where comments by a prosecutor encourage a jury to base its decision on improper grounds, we consider whether this misconduct denied the defendant a fair trial. *Id.* ¶ 27. Where no objection was made at trial,

we review the claim on appeal for fundamental error. *Id.*

{17} The comments made by the prosecutor refer to Defendant's silence in the immediate aftermath of the attack and also in the three-week interval between the attack and Defendant's statement to police. Defendant was not immediately apprehended by police. The prosecutor's comment that Defendant could have, but chose not to, contact the police was a reference to pre-arrest silence, but it should not be reviewed as an evidentiary matter. These comments may, however, have constituted prosecutorial misconduct by encouraging the jury to convict Defendant on improper grounds, and we consider below whether this comment constituted fundamental error. *Id.*

{18} The prosecutor also commented on Defendant's silence after his arrest. The three-week interval on which the prosecutor commented includes time when Defendant was in the custody of the Pojoaque Tribal Police between December 16 and December 28. The record does not indicate whether Defendant was given the *Miranda* warnings on December 16, and the State argues that we should assume that no warning was given. We decline, however, to place on Defendant the burden of showing that law enforcement complied with the well-known requirements of *Miranda.* Rather, where such an inference will benefit a defendant, we presume that the warning was given. *See Gutierrez,* 2003–NMCA–077, ¶ 10, 133 N.M. 797, 70 P.3d 787.

{19} We conclude that Defendant's silence while in the custody of the Pojoaque Tribal Police is protected even though he was held on unrelated charges. *Doyle,* 426 U.S. at 617–18, 96 S.Ct. 2240. The Fifth Amendment protections stated in the *Miranda* warnings are a general right against self-incrimination. *Cf. Arizona v. Roberson,* 486 U.S. 675, 683–84, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (holding that a suspect who has invoked his Fifth Amendment right to counsel may not be questioned regarding a separate investigation); *State v. Juarez,* 120 N.M. 499, 502–03, 903 P.2d 241, 244–45 (Ct.App. 1995) (holding that a defendant arrested on one charge was entitled to *Miranda* warn-

ings prior to police questioning regarding another more serious charge). It would be inconsistent with *Doyle* to offer a defendant the implicit assurance that his or her decision to remain silent will not be used against him or her, and then add that it may be used in another trial on a different charge. 426 U.S. at 618, 96 S.Ct. 2240. Therefore, we consider Defendant's silence protected under *Doyle* from the moment he was arrested by the Pojoaque Tribal Police.

{20} The State has also suggested that Defendant did not invoke his right to remain silent, and the prosecutor could not have commented on the exercise of a right that was not invoked. *Compare State v. Garvin*, 2005–NMCA–107, ¶ 24, 138 N.M. 164, 117 P.3d 970 (distinguishing a defendant's failure to provide "the whole story" when questioned by the police from his failure to testify at trial), *and Foster*, 1998–NMCA–163, ¶ 14, 126 N.M. 177, 967 P.2d 852 ("The *Miranda* warnings do not imply that the arrestee's half-truths will carry no penalty."), *with Hennessy*, 114 N.M. at 288, 837 P.2d at 1371 (rejecting the argument that a defendant who gives a statement to the police waives the right to be free from comment on silence). While we agree that silence is protected only if a right to remain silent is invoked, the record contains no evidence that Defendant did not invoke this right while in the custody of the Pojoaque Tribal Police. Defendant's later statement does not have the effect of waiving any objection to comment on his silence prior to that statement. Because Defendant was in custody for a portion of the three weeks referred to by the prosecutor, and because we assume that he invoked his rights while in custody, Defendant's silence was protected as in *Doyle* from prosecutorial comment. He is not entitled to a new trial, however, unless he can show that the prosecutor's comments resulted in fundamental error. *See Hennessy*, 114 N.M. at 289, 837 P.2d at 1372.

**3. Fundamental Error**

{21} When a defendant fails to object at trial to comments made by the prosecution about his or her silence, we review only for fundamental error, recognizing that it is "fundamentally unfair and a viola-tion of due process" to allow an individual's invocation of the right to remain silent to be used against him or her at trial. *Allen*, 2000–NMSC–002, ¶ 27, 128 N.M. 482, 994 P.2d 728; *see also Isiah*, 109 N.M. at 25, 781 P.2d at 297; *Clark*, 108 N.M. at 303, 772 P.2d at 337. This review consists of two parts. We first determine whether any error occurred, i.e., whether the prosecutor commented on the defendant's protected silence. If such an error occurred, we then determine whether the error was fundamental. An error is fundamental if there is a "reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Clark*, 108 N.M. at 303, 772 P.2d at 337; *cf. United States v. Olano*, 507 U.S. 725, 731–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (discussing federal review under the plain error standard). We have recognized that more direct prosecutorial comments on a defendant's invocation of the right to remain silent are more likely to be fundamental error. Applying this analysis, we have held no fundamental error occurred where the prejudicial effect of the prosecutor's comments was minimal and the evidence presented by the prosecution was overwhelming. *Isiah*, 109 N.M. at 25, 781 P.2d at 297.

{22} Our cases may have created some confusion about the proper analysis of a claim that a prosecutor has commented on a defendant's silence when no objection was made at trial. *See, e.g., Gutierrez*, 2003–NMCA–077, ¶¶ 17–18, 133 N.M. 797, 70 P.3d 787 (characterizing this as harmless error review and separately considering whether the error was fundamental). This confusion may stem from *Hennessy's* reference to "the remedy of automatic reversal regardless of objection ... as a prophylactic measure to deter prosecutors from obtaining convictions by unfair tactics." 114 N.M. at 286, 837 P.2d at 1369. *Hennessy* recognizes that appellate courts will reverse on the basis of an unpreserved error only where the error is fundamental. *Hennessy* does not stand for the proposition that any prosecutorial comment on silence will require reversal because the court in fact considered whether the defendant was prejudiced after concluding that the prosecutor's comments violated the defen-

dant's privilege. *Id.* at 289, 837 P.2d at 1372 (reversing where the evidence presented was not overwhelming and the court could not "say there is no reasonable probability that the prosecutor's numerous comments on silence were not a significant factor in the jury's deliberations in relation to the rest of the evidence before them"). Where a defendant has made a proper objection at trial, the appellate court determines whether the prosecution commented on the defendant's protected silence, and if so, reverses the conviction unless the State can demonstrate that "the error was harmless beyond a reasonable doubt." *Garcia,* 118 N.M. at 779, 887 P.2d at 773. Where no timely objection is made, the court considers only whether the defendant has shown that there is a reasonable probability that the error was a significant factor in the jury's deliberations relative to the other evidence before them. *Isiah,* 109 N.M. at 25, 781 P.2d at 297; *Clark,* 108 N.M. at 303, 772 P.2d at 337. While similar considerations influence both harmless and fundamental error analyses, they are not interchangeable, and both need not be applied on appellate review.

█ {23} Although we conclude that the prosecution's comments regarding Defendant's silence were error, they were not fundamental error. There is a reasonable argument that the comments did not directly call on the jury to infer guilt from Defendant's silence. The comments on the three-week interval suggest that the Defendant had an opportunity to think up an explanation in that time, not that the failure to give a statement was in itself proof of guilt. The prosecution offered evidence at trial that was inconsistent with self-defense. Investigators testified that a screen at the back of the house had been cut. The victim had been stabbed eight times and hit repeatedly with a hammer and another object, and blood spat-

ter low to the ground suggests that a portion of the attack occurred while he was on the ground. After the attack, Defendant gathered up key pieces of evidence, took the victim's keys and wallet, and fled the scene, later disposing of the incriminating weapons. In light of the evidence of forcible entry into the victim's house, an extended struggle within the house, Defendant's flight, and attempt to hide evidence of the attack, we conclude that the prosecutor's comments were not a significant factor in deliberations and do not rise to the level of fundamental error.[3] In light of the minimal prejudicial effect of the prosecutor's comments, and the "overwhelming evidence" presented by the prosecution, Defendant has not shown fundamental error. *See Isiah,* 109 N.M. at 25, 781 P.2d at 297.

## B. Double Jeopardy

{24} Defendant next argues he was denied constitutional protection against multiple punishments for the same offense because the same conduct forms the basis of both his felony murder and aggravated burglary convictions, and his five tampering with evidence convictions were based on a continuous course of conduct with a single *mens rea* which the Legislature intended to constitute a single crime. With respect to the felony murder and aggravated burglary claims, we conclude that the underlying conduct is not unitary and that the convictions do not violate the protection provided against multiple punishments. We conclude that the Legislature did not intend the tampering statute to punish unitary conduct, but that some of Defendant's actions are distinct enough to support multiple tampering convictions. Accordingly, we dismiss two of Defendant's five tampering convictions.

3. Defendant argues that two other comments by the prosecutor in closing were also prejudicial and that he is entitled to a new trial on the basis of cumulative error. First, the prosecutor made reference to the possibility that the claw of a hammer was used in Defendant's attack. The trial court sustained defense counsel's objection to this comment and no curative instruction was requested. Second, at the end of his closing the prosecutor asked the jury to "send a signal that this could never be tolerated in New Mexico." Counsel again objected; however, the trial court did not rule on the objection, and defense counsel began his closing rather than requesting a ruling or curative instruction. These issues were not preserved for appeal and are not fundamental error. *Allen,* 2000–NMSC–002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (holding that isolated and minor improprieties are not normally sufficient to require a new trial).

{25} The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). This prohibition relates to two general categories of cases: cases in which a defendant has been charged with multiple violations of a single statute based on a single course of conduct, known as "unit of prosecution" cases; and cases in which a defendant is charged with violations of multiple statutes for the same conduct, known as "double-description" cases. *Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). Defendant raises a double-description issue, arguing that the felony murder and aggravated burglary convictions are based on the same conduct. Defendant also raises a unit of prosecution issue that we address in the next subsection of this opinion.

### 1. Double–Description Claim

{26} We first address Defendant's double-description claim. In double-description cases, we consider first whether the conduct underlying the offenses is unitary and then consider whether the Legislature intended multiple punishments for this conduct. *See Swafford*, 112 N.M. at 13, 810 P.2d at 1233. If the conduct is unitary, a defendant cannot be convicted of both felony murder and the predicate felony. *State v. Contreras*, 120 N.M. 486, 491, 903 P.2d 228, 233 (1995). There can be no conviction for killing in the course of a felony without proof of all of the elements of the felony. *Id.* Therefore, the predicate felony is subsumed within the offense of felony murder, and cannot support a separate conviction. *Id.* In this case, the jury returned convictions for felony murder, armed robbery, and aggravated burglary. The district court dismissed the armed robbery conviction.

{27} When determining whether Defendant's conduct was unitary, we consider whether Defendant's acts are separated by sufficient "indicia of distinctness." *Swafford*,

112 N.M. at 13, 810 P.2d at 1233. On several occasions, this Court has previously considered whether the force used to commit a murder merged with the force constituting an element of another crime and therefore was unitary conduct requiring further analysis of legislative intent. *Foster*, 1999–NMSC–007, ¶¶ 34, 40, 126 N.M. 646, 974 P.2d 140 (concluding that convictions for kidnapping and felony murder did not involve unitary conduct although convictions for armed robbery and felony murder did); *State v. Cooper*, 1997–NMSC–058, ¶¶ 61–62, 124 N.M. 277, 949 P.2d 660 (holding that the force used to commit felony murder did not merge with the force underlying an aggravated battery conviction); *State v. Livernois*, 1997–NMSC–019, ¶¶ 21–22, 123 N.M. 128, 934 P.2d 1057 (upholding convictions for first-degree murder and aggravated burglary); *Contreras*, 120 N.M. at 490, 903 P.2d at 232 (holding that murder and theft were unitary conduct when the victim had been stabbed once and the defendant immediately took the victim's cab and its contents). In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed. *See, e.g., Foster*, 1999–NMSC–007, ¶ 34, 126 N.M. 646, 974 P.2d 140; *Cooper*, 1997–NMSC–058, ¶ 59, 124 N.M. 277, 949 P.2d 660. We have also looked for an event that intervened between the initial use of force and the acts that caused death. *See, e.g., Cooper*, 1997–NMSC–058, ¶ 61, 124 N.M. 277, 949 P.2d 660. In *Cooper*, we concluded that death was not the consequence of a defendant's initial act of battery because there was a struggle between victim and defendant in which several different weapons were used. *Id.* We held that this struggle was an intervening event between an aggravated battery and later murder, and therefore the underlying conduct was not unitary. In these situations, which are not intended to be exclusive of other possibilities, we have characterized the conduct as not unitary and have held multiple punishments were authorized.

{28} The statutory definition of the relevant crimes controls the conduct we consider. Aggravated burglary is the unauthorized entry of a dwelling with the intent to commit a

felony therein, when the entrant either "is armed with a deadly weapon; after entering, arms himself with a deadly weapon; [or] commits a battery upon any person while in such place, or in entering or leaving such place." Section 30–16–4. The jury was instructed to return a guilty verdict with respect to the aggravated burglary claim if it found that Defendant "entered a dwelling without authorization ... with the intent to commit any felony or theft once inside ... [and that] defendant touched or applied force to [the victim] in a rude or angry manner while entering or leaving, or while inside."

{29} The State theorized that Defendant broke into the victim's home intending to steal. Defendant was surprised by the victim's return to the house, attacked him, and in the course of an extended struggle, killed him. The State argues on appeal that the underlying conduct was not unitary because the aggravated burglary took place when Defendant first used a weapon against the victim, while the murder took place at a later point in time. Defendant argues that the force used in the aggravated burglary was the same force used to commit the felony murder, and that all of the events took place in the same location as part of a single struggle. *See Contreras,* 120 N.M. at 490, 903 P.2d at 232.

{30} The jury was not instructed to determine when the aggravated burglary was completed. Nevertheless, the evidence offered at trial supports a conclusion that Defendant's conduct was not unitary. *Cf. Foster,* 1999–NMSC–007, ¶ 31, 126 N.M. 646, 974 P.2d 140 (reviewing evidence presented at trial for sufficient "indicia of distinctness"). The record shows that Defendant used several weapons during the attack. While the initial use of force completed the crime of aggravated burglary, the evidence shows that the death was not caused by this initial attack alone. The facts that several weapons were used and that strands of Defendant's hair were found in the victim's hands indicate an intervening struggle during which the victim defended himself. We conclude that the

conduct in this case is not unitary, but consists of at least two distinct acts: the initial attack, completing the crime of aggravated burglary, and the later murder.[4] *Cooper,* 1997–NMSC–058, ¶¶ 60–62, 124 N.M. 277, 949 P.2d 660 (affirming convictions for felony murder and aggravated battery where the evidence showed that "death was not the consequence of the initial act of battery" but followed a struggle).

{31} Because the conduct underlying the convictions for aggravated burglary and felony murder was not unitary, we do not consider "whether the [L]egislature intended to create separately punishable offenses" for the unitary conduct. *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. We therefore affirm the aggravated burglary conviction.

### 2. Unit of Prosecution Claim

{32} Defendant was convicted of five counts of tampering with evidence, one each for hiding the knife, glass, hammer, car, and clothing. He argues that his disposal of these items consisted of a continuous course of conduct with a single *mens rea* and constitute a single crime. In "unit of prosecution" cases, where a defendant is charged with multiple violations of a single statute, we inquire "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Id.* at 8, 810 P.2d at 1228. If a statute clearly creates separate offenses, we follow the statute. *State v. Alvarez–Lopez,* 2004–NMSC–030, ¶ 40, 136 N.M. 309, 98 P.3d 699. In construing the statute we consider the text and its apparent purpose. *Id.* ¶¶ 40–42. We also consider whether the offenses are separated by sufficient "indicia of distinctness" as an indication of legislative intent. *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. Finally, if we have not found a clear indication of legislative intent, we apply the "rule of lenity," a presumption against imposing multiple punishments for acts that are not sufficiently distinct. *Alvarez–Lopez,* 2004–NMSC–030, ¶ 40, 136 N.M. 309, 98 P.3d 699.

---

**4.** We recognize our inquiry is highly fact specific, but note that the essential facts were not contested at trial. In cases where the facts relevant to a determination that conduct was unitary are con-

tested at trial, courts should carefully consider whether the instructions given will allow the jury to adequately resolve the factual issues presented.

{33} Defendant argues that the statute forbids tampering with "any" physical evidence, rather than each piece of evidence and reasons that the use of the word "any" suggests punishment for the entire course of conduct rather than each act of tampering. The State suggests first that this analysis is inconsistent with *State v. Morro*, 1999–NMCA–118, ¶ 1, 127 N.M. 763, 987 P.2d 420 (upholding multiple convictions for damaging gravestones even though all damage occurred in a single incident). The relevant statute in that case also prohibited defacing of any gravestone, *id.* ¶ 13, but the court did not find that this established the Legislature's intent to punish defacing multiple gravestones as a single crime. We believe *Morro* is distinguishable in at least two respects. There were different victims for each act of vandalism to a different gravestone, *id.* ¶ 19, and the court in *Morro* concluded that each act of vandalism took place at a distinct time and place, each time the defendant smashed or defaced a particular gravestone. *Id.* ¶ 20. Nonetheless, we are not persuaded that the statute's use of the word "any" shows the Legislature's intent to permit only a single conviction for all tampering with a single crime scene.

{34} The State argues that the underlying purpose of the tampering statute is to punish those who deprive the State of evidence needed in investigating possible crimes. Because the harm associated with tampering increases with each piece of evidence removed, we are asked to conclude the Legislature intended to punish each act of tampering, rather than the course of conduct. This argument proves too much. First, the statute, prior to the 2003 amendment, made no distinction based on the severity of the underlying crime, suggesting that the Legislature was not focused on the severity of the harm caused by tampering. *Compare* § 30–22–5 (1963, prior to 2003 amendment) (providing that "[w]hoever commits tampering with evidence is guilty of a fourth degree felony"), *with* NMSA 1978, § 30–22–5 (2003) (providing for different degrees of the offense of tampering). Second, given the ambiguity in the term "evidence," the State's interpretation could open the door to a virtually unlimited number of tampering prosecutions in any given case. Defendant in this case, for example, could have been charged with separate tampering counts for each article of clothing he concealed: shoes, shirt and pants. We believe the Legislature intended a more moderate result, consistent with our unitary conduct analysis. We consider whether a defendant's actions can be divided into discrete acts, and permit only a single conviction where they cannot. In the absence of clear evidence that the Legislature intended to punish a defendant for every individual piece of evidence hidden, we apply the rule of lenity and presume that the Legislature did not intend to impose multiple punishments on a single action.

{35} Because we conclude that the statute does not clearly define the unit of prosecution, we consider whether Defendant's acts are separated by sufficient "indicia of distinctness." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. Such indicia include the timing, location, and sequencing of the acts, the existence of an intervening event, the defendant's intent as evidenced by his conduct and utterances, and the number of victims. *Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991).

{36} Defendant's conduct appears to be three distinct acts rather than a single continuous action. All of the evidence was gathered from the crime scene in a relatively short span of time, but was disposed of at three distinct times in different locations. The State argues that each act of removing material from the crime scene should be viewed as a separate act of tampering. At the time of the alleged tampering, the tampering statute prohibited "destroying, changing, hiding, placing or fabricating any physical evidence" and did not differentiate among the degrees of offenses with which the tampering had occurred. Section 30–22–5. The jury was instructed to return guilty verdicts if it found that Defendant hid evidence. They were not instructed to consider specifically whether Defendant changed or removed evidence. The relevant actions are, therefore, throwing the knife, hammer, and crystal or glass from the car, abandoning the car, and placing the clothing in the van.

{37} Defendant hid evidence at three different times: throwing the box containing the knife, glass, and hammer from the car; leaving the car on the side of the road on his return trip; and hiding his clothing in his van the next morning after he returned to his house. These actions each took place in a different location. These were three distinct acts, supporting three convictions for tampering with evidence.

{38} Defendant has made a strong argument that the disposal of the knife, glass, and hammer was a single action. Not only were the three items gathered in a short period of time, but they were also thrown together, in a single box, on the side of the road. No events intervened as he hid each weapon. There is no indication that Defendant's intentions were different with respect to each weapon. To the extent that the crime had identifiable victims, they were the same with respect to each weapon. In the present case, the same interest was harmed when the knife, glass, and hammer were hidden, and we have already found that these items were hidden at the same time and in the same location.

{39} We therefore dismiss two of the tampering counts because Defendant's disposal of the weapons constituted a single act and can support only a single tampering conviction.

## III. CONCLUSION

{40} We hold that the prosecutor's comments on Defendant's pre-arrest and post-*Miranda* silence do not rise to the level of fundamental error. We affirm Defendant's convictions for felony murder and aggravated burglary and remand to the district court with directions to dismiss two of the five tampering convictions.

{41} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA and PETRA JIMENEZ MAES, Justices.

RICHARD C. BOSSON, Chief Justice (concurring in part and dissenting in part) and EDWARD L. CHÁVEZ, Justice (concurring in part and dissenting in part).

CHÁVEZ, Justice (concurring in part and dissenting in part).

{42} I concur with the discussion in Section II(A) in its entirety and Section II(B)(2) of the majority opinion. However, because the conduct which supports the aggravated burglary is indistinguishable from the conduct that caused the victim's death, I would vacate the aggravated burglary conviction as a violation of double jeopardy. *See State v. Contreras*, 120 N.M. 486, 491, 903 P.2d 228, 233 (1995) (It would be a violation of the Double Jeopardy Clause to convict and sentence a defendant for both felony murder and the predicate felony when the conduct is unitary.). Therefore, I respectfully dissent from the discussion in Section II(B)(1).

{43} Conduct is not unitary if the defendant commits acts which are separated by sufficient indicia of distinctness. *State v. Mora*, 1997–NMSC–060, ¶ 68, 124 N.M. 346, 950 P.2d 789. "The court may consider as 'indicia of distinctness' the separation of time or physical distance between the illegal acts, 'the quality and nature' of the individual acts, and the objectives and results of each act." *Id.* In this case, the theory advanced by the State was that Defendant broke into the victim's home intending to steal. While Defendant was inside the home, the victim returned, surprising Defendant. A struggle ensued and the victim was killed during the struggle.

{44} The forensic pathologist who testified at trial opined that the cause of death was due to "injuries to the head and stab wounds of the neck." After describing the wounds to the head and neck the pathologist was asked whether it was possible "to determine the order in which these wounds were sustained." The response was "Actually no. All these wounds looked to be made in what we call the perimortem interval that means right before death, during death or right after death, the wounds are going to look similar irregardless of when they occurred in relationship to each other." I find it difficult to find a separation of time or physical distance between the illegal act giving rise to aggravated burglary and the act giving rise to murder.

{45} The distinction is difficult because in this case the jury was instructed that for it to find Defendant guilty of Felony Murder, the State was required to prove beyond a reasonable doubt that Defendant caused the death of the victim *during* the commission of or the attempt to commit aggravated burglary.[1] To find aggravated burglary the jury was instructed in relevant part:

The State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant entered a dwelling without authorization;

2. The defendant entered the dwelling with the intent to commit any felony or theft once inside;

3. The defendant touched or applied force to Fr. Michael Mack in a rude or angry manner while entering or leaving, or while inside.

{46} The key element is the application of force. In the past, we have upheld a felony murder conviction and aggravated burglary conviction as against a double jeopardy challenge because the defendant entered a structure, while armed, with the intent to commit a felony in the structure. *State v. Livernois*, 1997–NMSC–019, ¶ 20, 123 N.M. 128, 934 P.2d 1057. In *Livernois*, we concluded that the crime of aggravated burglary was complete once the defendant entered the structure because he was already armed and had the intent to commit a felony in the structure. As such, the subsequent shooting of the victim by the defendant was not unitary conduct. One could find a separation of time and physical distance between the time the defendant in *Livernois* entered the dwelling while armed and his subsequent shooting of the victim.

{47} Defendant in this case was not charged with aggravated burglary based on his entry into the victim's home while armed or even that he armed himself with a deadly weapon once inside. Instead, the State charged Defendant with aggravated burglary based on his entry into the structure and application of force to Fr. Mack. It was Defendant's touching or application of force to Fr. Mack in a rude or angry manner while entering, leaving or inside Fr. Mack's house that resulted in the aggravated burglary conviction. It was also the force used during the commission of the aggravated burglary that resulted in the victim's death.

{48} The majority relies on *State v. Cooper*, 1997–NMSC–058, 124 N.M. 277, 949 P.2d 660, to support its analysis that Defendant's conduct was not unitary. In *Cooper*, the court did not find unitary conduct involving conduct giving rise to a conviction for aggravated battery and felony murder. As such we upheld defendant's convictions for felony murder and aggravated battery. The rationale seemed to be a finding of multiple attacks on the victim by the defendant, each time using different weapons. *Cooper*, 1997–NMSC–058, ¶ 61, 124 N.M. 277, 949 P.2d 660. Indeed, we stated that the first attack with one of the weapons was followed by a struggle and then more acts which caused the death of the victim. Thus, we concluded that the struggle was an intervening event between the initial battery and the acts which caused the death of the victim. *Id.* In this case, the testimony of the pathologist supports only a finding of a single attack which resulted in the death of Fr. Mack.

{49} When the force used during the commission of an aggravated burglary results in death, the Legislature has elevated the crime from a second degree felony to a capital felony. The punishment is therefore increased from nine years for aggravated burglary to life imprisonment for felony murder with the predicate felony being aggravated burglary. Therefore, in my opinion the Legislature did not intend punishment for both aggravated burglary and felony murder. *See Swafford v. State*, 112 N.M. 3, 15, 810 P.2d 1223, 1235 (holding that even if an initial presumption is created that the Legislature intended multiple punishments for the same conduct under *Blockburger*, it may be inferred that the Legislature did not intend punishment under both statutes if "one statutory provision incorporates many of the ele-

---

1. Armed robbery was also a predicate felony for felony murder. As noted in the majority opinion, the district court dismissed the conviction for armed robbery.

ments of a base statute, and extracts a greater penalty than the base statute").

{50} For the foregoing reasons, I would vacate Defendant's aggravated burglary conviction. The majority disagreeing, I respectfully dissent.

I CONCUR: RICHARD C. BOSSON, Chief Justice.