This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: December 6, 2018**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.                                                          **NO. S-1-SC-36489**

**ANNETTE C. FUSCHINI,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Fernando R. Macias, District Judge**

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Respondent

**DECISION**

**CLINGMAN, Justice.**

**{1}** A divided Court of Appeals affirmed the convictions of Defendant Annette Fuschini for involuntary manslaughter, contrary to NMSA 1978, Section 30-2-3(B) (1994), and aggravated driving while intoxicated (DWI) resulting in bodily injury, contrary to NMSA 1978, Section 66-8-102(D)(2) (2010, amended 2016). *State v. Fuschini*, 2017-NMCA-084, ¶¶ 1, 15-17, 406 P.3d 965. Defendant petitioned this Court, challenging both convictions, and we granted certiorari. *See* NMSA 1978, § 34-5-14(B) (1972); Rule 12-502 NMRA.

**{2}** The facts are undisputed. Defendant Annette Fuschini killed her fiancé by driving over him with a truck while she was intoxicated. The district court sentenced Defendant to three hundred sixty-four days in prison for aggravated DWI and eighteen months for involuntary manslaughter. Defendant now asks this Court to overturn the Court of Appeals and vacate her convictions. Defendant argues that her convictions violate her right to be free from double jeopardy and that the vehicular homicide statute preempts her involuntary manslaughter conviction.

**{3}** Our disposition of this case is by nonprecedential decision. *See* Rule 12-405(B) NMRA ("The appellate court may dispose of a case by non-precedential order, decision or memorandum opinion . . . [where t]he issues presented have been

previously decided by the Supreme Court or Court of Appeals . . . [or t]he issues presented are manifestly without merit."). We hold that Defendant's convictions of both aggravated DWI, as it was instructed to the jury in this case, and involuntary manslaughter violate the prohibition against double jeopardy because Defendant was convicted twice for causing one death. We vacate Defendant's conviction of aggravated DWI. We hold that preemption does not apply to the facts presented in this case, and we affirm Defendant's conviction of involuntary manslaughter.

## I.    BACKGROUND

{4}    Defendant's convictions stem from events that occurred when Defendant was driving home with her fiancé, Carlos Nevarez III (Victim), after a night of drinking. Defendant and Victim left a party in a pickup truck with Defendant driving. Defendant admitted that she was intoxicated when she drove the truck. While driving home, Defendant and Victim started to argue. At one point during the argument, Defendant brought her truck to a sudden halt. Victim got out of the vehicle, yelled something at Defendant, and then began to walk away. Witnesses reported that Defendant drove her truck off the roadway and over a curb, steering the truck toward where Victim was walking "away from the road." Defendant drove the truck over Victim, killing him.

{5}    The State indicted Defendant for first-degree murder and aggravated DWI. During the trial, the State added the lesser included charge of second-degree murder.

3

At the close of the evidence, Defendant requested that the jury also be instructed on both voluntary and involuntary manslaughter. The district court denied the voluntary manslaughter instruction because it did not believe Defendant had shown sufficient provocation. The district court agreed to instruct the jury on the lesser offense of involuntary manslaughter. Neither the State nor the Defendant requested that the jury be instructed on vehicular homicide by DWI as an alternative charge. *See* NMSA 1978, § 66-8-101 (2004, amended 2016) (specifying the crime of homicide by vehicle while intoxicated). The jury was ultimately instructed on first-degree murder, second-degree murder, involuntary manslaughter, and aggravated DWI. Without explanation, the parties altered the jury instruction for aggravated DWI by replacing the element requiring the jury to find "bodily injury" as defined in the aggravated DWI statute with an element requiring the jury to find that Defendant caused Victim's death. *See* § 66-8-102(U)(1) (2010) (defining bodily injury); UJI 14-4507 NMRA (including the statutory definition of bodily injury as element 3 of the instruction). The jury acquitted Defendant of first- and second-degree murder but found Defendant guilty of both aggravated DWI and involuntary manslaughter. Defendant appealed her convictions on double jeopardy grounds. *See Fuschini*, 2017-NMCA-084, ¶ 6.

{6}     The Court of Appeals majority opinion acknowledged that both involuntary manslaughter and aggravated DWI, as instructed, required the jury to find that

Defendant "caused the death of [Victim]" and that the district court erred by including "caused the death of [Victim]" as an element in the aggravated DWI instruction. *Id.* ¶¶ 10, 13. The Court of Appeals majority opinion reasoned that the error did not give rise to a double jeopardy issue because the aggravated DWI statute is not intended to be a homicide statute. *Id.* ¶¶ 12-13. The majority determined that the Legislature intended multiple punishments for involuntary manslaughter and aggravated DWI. *Id.* ¶ 14. Satisfied that legislative intent was clear, the divided Court of Appeals affirmed Defendant's convictions. *Id.* ¶ 15.

{7}     Defendant appeals both convictions in this Court.

## II.     DISCUSSION

{8}     We begin our analysis with Defendant's double jeopardy claim. We then assess Defendant's complaint that the involuntary manslaughter conviction must be vacated on preemption grounds.

## A.     Double Jeopardy Claim

{9}     "A double jeopardy challenge presents a question of constitutional law, which we review de novo." *State v. Torres*, 2018-NMSC-013, ¶ 17, 413 P.3d 467. Both the United States Constitution and the New Mexico Constitution establish a criminal defendant's right to be free from multiple convictions for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. There are two ways in which double

jeopardy protections can be violated by multiple convictions. *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Relevant here are convictions under different statutes where the same criminal conduct is the basis for each of the multiple charges. *Torres*, 2018-NMSC-013, ¶ 16. This case represents such a double description issue.

{10} "In reviewing a double-description double jeopardy challenge, where a defendant's conduct violates more than one statute, we must first determine whether the defendant's conduct was unitary, requiring an analysis of whether or not a defendant's acts are separated by sufficient 'indicia of distinctness.'" *Id.* ¶ 18 (quoting *State v. DeGraff*, 2006-NMSC-011, ¶¶ 26-27, 139 N.M. 211, 131 P.3d 61). In this case, both parties concede that Defendant's conduct was unitary.

{11} "When unitary conduct is the basis for multiple convictions, we must attempt to determine whether 'the Legislature[] inten[ded] to punish the crimes separately.'" *Torres*, 2018-NMSC-013, ¶ 21 (alterations in original) (quoting *State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747). There is no express legislative statement of intent that multiple punishments are permissible under involuntary manslaughter and aggravated DWI. *See* § 30-2-3(B); § 66-8-102(D)(2) (2010); *Fuschini*, 2017-NMCA-084, ¶ 8. Therefore, we apply the modified *Blockburger* test to determine whether multiple punishments are appropriate. *Swick*, 2012-NMSC-018,

6

¶ 21 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)) (rejecting the strict application of the *Blockburger* test and explaining and applying a modified *Blockburger* test). "In New Mexico, we now apply a modified *Blockburger* test to not only the defining statutes in the abstract but also to the State's theory of the particular case, because our law does not permit an application of *Blockburger* that is 'so mechanical that it is enough for two statutes to have different elements.'" *Torres*, 2018-NMSC-013, ¶ 25 (quoting *Swick*, 2012-NMSC-018, ¶ 21). We will look "to the actual legal theory in the particular case by considering such resources as the evidence, the charging documents, and the jury instructions." *State v. Montoya*, 2013-NMSC-020, ¶ 49, 306 P.3d 426 (citing *Swick*, 2012-NMSC-018, ¶¶ 21, 26).

{12} Defendant was convicted of aggravated DWI contrary to Section 66-8-102(D)(2) (2010) and involuntary manslaughter contrary to Section 30-2-3(B). Section 66-8-102(D)(2) (2010) states that aggravated DWI consists of "*causing bodily injury* to a human being as a result of the unlawful operation of a motor vehicle while driving under influence of intoxicating liquor." (Emphasis added.) The statute defines "bodily injury" as "injury to a person that is *not likely to cause death* or great bodily harm to the person . . . ." Section 66-8-102(U)(1) (2010) (emphasis added). The phrase "not likely to cause death" supports our conclusion that the Legislature did not intend to punish homicide under the aggravated DWI statute.

**{13}** The actual instructions to the jury in this case did not reflect the Legislature's intent. In fact, the actual jury instruction directly contradicted the legislative intent that aggravated DWI is not a statute to punish homicide. Instruction eleven reflected UJI 14-4507, aggravated DWI, element for element *except for element 3* and stated the following elements:

> (1) [D]efendant operated a motor vehicle;
> (2) At that time [D]efendant was under the influence . . . [;] that is, . . . [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public;
> (3) [D]efendant *caused the death of* [Victim]; [and]
> (4) This happened in New Mexico, on or about the 12th day of June, 2013.

(Emphasis added.)

**{14}** In addition to instruction eleven, instruction seven did reflect UJI 14-231 NMRA, involuntary manslaughter, element for element and stated the following elements:

> (1) [D]efendant ran over [Victim] with a vehicle;
> (2) [D]efendant should have known of the danger involved in her actions;
> (3) [D]efendant acted with a willful disregard for the safety of others;
> (4) [D]efendant's act *caused the death of* [Victim]; [and]
> (5) This happened in New Mexico on or about the 12th day of June, 2013.

(Emphasis added.)

8

{15}     Both jury instructions included the essential element that Defendant "caused the death of [Victim]." The Legislature could not have intended or foreseen that the statute could be interpreted to include the element of death in aggravated DWI. *See* § 66-8-102(U)(1) (2010) (defining bodily injury as an injury "not likely to cause death or great bodily harm, but does cause painful or temporary disfigurement or temporary loss or impairment of any member or organ of the [victim's] body"); *see also* UJI 14-4507 (stating, as element 3, that "[t]he defendant caused painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of [the victim]"). Contrary to legislative intent, the erroneous aggravated DWI instruction exposed Defendant to two convictions for the single homicide of Victim. Had the parties or the district court adhered to the Uniform Jury Instruction for aggravated DWI, UJI 14-4507 NMRA, the error that determines the outcome of this appeal could have been avoided.

{16}     Additionally, if the parties or the district court had consulted the cross references for the aggravated DWI and involuntary manslaughter statutes they would have been alerted to their error that put Defendant in double jeopardy. The cross reference listed under Section 66-8-102 (2010), aggravated DWI, states, "For violation being a felony if homicide committed, *see* 66-8-101 NMSA 1978," which is the vehicular homicide statute. The same cross-reference is listed under Section

9

30-2-3, manslaughter: "For homicide by vehicle, *see* 66-8-101 NMSA 1978," the vehicular homicide statute. By inserting "caused the death" into element 3 of the aggravated DWI instruction, the parties and the district court tailored that instruction to the facts of this case, caused the jury to convict Defendant of both the altered aggravated DWI and involuntary manslaughter charges, and put Defendant in double jeopardy.

{17} We do not hold that involuntary manslaughter (or vehicular homicide) and aggravated DWI can never be *charged* together. But we hold that convicting a defendant of involuntary manslaughter (or vehicular homicide) and aggravated DWI as instructed in this case, for the same death, violates double jeopardy.

{18} If the aggravated DWI and involuntary manslaughter statutes had been instructed as written, consistent with UJIs 14-4507 and 14-231, legislative intent would have precluded double jeopardy. But where the parties changed the aggravated DWI jury instruction so fundamentally that it no longer resembled the statute, legislative intent as to that statute as enacted was no longer relevant.

{19} Despite the improper alteration of the aggravated DWI instruction, we agree with the Court of Appeals dissent "that the instructions given to the jury are the law of the case." *Fuschini*, 2017-NMCA-084, ¶ 27 (Vigil, J., dissenting); *see Estate of Saenz v. Ranack Constructors, Inc.*, 2018-NMSC-032, ¶ 40, 420 P.3d 576

10

("[U]nchallenged jury instructions are the law of the case."); *State v. Ramirez*, 2018-NMSC-003, ¶ 17, 409 P.3d 902 ("[The defendant] d[id] not question the validity of the . . . jury instruction" which "become[s] the law of the case."). We complete the analysis of Defendant's double jeopardy claim based on the jury instructions as given.

{20} "If after examining the relevant indicia the legislative intent remains ambiguous, the rule of lenity requires us to presume that the Legislature did not intend multiple punishments for the same conduct." *Swick*, 2012-NMSC-018, ¶ 13 (citing *State v. Swafford*, 1991-NMSC-043, ¶ 34, 112 N.M. 3, 810 P.2d 1223). "Lenity applies in cases of ambiguity regarding the reach of criminal statutes, 'because reasonable minds can differ as to the Legislature's intent in punishing the[] two crimes.'" *Montoya*, 2013-NMSC-020, ¶ 51 (alteration in original) (quoting *Swick*, 2012-NMSC-018, ¶ 30). Guiding our analysis is the principle that one homicide may result in only one conviction of homicide. *See State v. Santillanes*, 2001-NMSC-018, ¶ 5, 130 N.M. 464, 27 P.3d 456.

{21} We conclude that Defendant was convicted twice for the same crime. By inserting the element "caused the death of [Victim]" into the jury instruction for one of two otherwise independent statutes, Defendant was convicted twice for committing one homicide. The altered uniform jury instruction for aggravated DWI, agreed to by all parties and read by the trial judge, imposed two convictions for the single killing

11

of a single victim.

{22} We vacate Defendant's conviction for aggravated DWI. *See Montoya*, 2013-NMSC-020, ¶ 55 (stating that "where one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence").

**B.     Preemption Claim**

{23} Defendant argues for the first time, not having raised the argument in the courts below, that involuntary manslaughter caused by DWI is a nonexistent crime, that the vehicular homicide statute preempts involuntary manslaughter in such a case, and that Defendant's conviction of involuntary manslaughter constitutes fundamental error. *See State v. Yarborough*, 1996-NMSC-068, ¶¶ 29-30, 122 N.M. 596, 930 P.2d 131 (holding that "the legislature intended to preempt the crime of involuntary manslaughter with the specific crime of homicide by vehicle when the predicate offense is a [misdemeanor] violation of the Motor Vehicle Code"); *see also State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 ("[B]ecause this claim was not preserved [at trial], we review only for fundamental error."). When our Legislature created the first homicide by vehicle statute in 1978, now Section 66-8-101, the Legislature intended to "require that prosecutions for unintentional homicide by operation of a motor vehicle be brought only under the homicide by

12

vehicle statute." *State v. Yarborough*, 1995-NMCA-116, ¶¶ 24-26, 120 N.M. 669, 905 P.2d 209. "Since the involuntary manslaughter statute, as applied to a vehicular killing, and the homicide by vehicle statute both require the same act and culpability, [Defendant] should have been charged with the more specific crime of vehicular homicide." *Id.* ¶ 27.

**{24}** Defendant asks us to correct an error by the district court that Defendant invited. We decline. Defendant was charged with first- and second-degree murder and, on Defendant's request, involuntary manslaughter was added. The jury was so instructed. Neither the district court nor the State nor Defendant ever mentioned vehicular homicide as a possible alternative. The jury acquitted Defendant of first- and second-degree murder and convicted Defendant of involuntary manslaughter.

**{25}** We will not vacate Defendant's involuntary manslaughter conviction because, even if there was error, Defendant invited the error. Defendant's argument that her involuntary manslaughter charge is fundamental error lacks merit. Where Defendant, by her own actions invites error, we will not consider a fundamental error argument. *State v. Clark*, 1989-NMSC-010, ¶ 30, 108 N.M. 288, 772 P.2d 322 ("The fundamental error rule guards against the corruption of justice. The doctrine has no application in cases where the defendant by his own actions created the error, where to invoke the doctrine would contravene that which the doctrine seeks to protect,

namely, the orderly and equitable administration of justice." (citation omitted)), *disapproved of on other grounds by State v. Henderson*, 1990-NMSC-030, ¶¶ 14-15, 109 N.M. 655, 789 P.2d 322. "A party may not be rewarded . . . when it invites jury instruction error and subsequently complains about that very error." *State v. Ortega*, 2014-NMSC-017, ¶ 34, 327 P.3d 1076, 1087 (citing *Estate of Gutierrez ex rel. Jaramillo v. Meteor Monument, L.L.C.*, 2012-NMSC-004, ¶ 34, 274 P.3d 97). "We have consistently followed the ethical maxim that 'no party can profit by [its] own wrong.'" *Proper v. Mowry*, 1977-NMCA-080, ¶¶ 64, 69-70, 90 N.M. 710, 568 P.2d 236 (citations omitted) (dismissing a complaint that a jury instruction was reversible error, as opposed to invited error, where the complaining party imposed the error).

{26}     We reject Defendant's preemption argument because the instruction on involuntary manslaughter was given at Defendant's request. *See State v. Young*, 1994-NMCA-061, ¶ 3, 117 N.M. 688, 875 P.2d 1119, *cert. denied* ("[A d]efendant may not claim on appeal that an instruction given at his request was error.").

## III.     CONCLUSION

{27}     We reverse the Court of Appeals and remand to the district court to vacate Defendant's conviction of aggravated DWI. We affirm Defendant's conviction of involuntary manslaughter.

{28}     **IT IS SO ORDERED.**

14

                         _____

                         **GARY L. CLINGMAN, Justice**

**WE CONCUR:**

_____

**JUDITH K. NAKAMURA, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**